WILLIAM H. JOHNSON v. STATE OF NEBRASKA.

FILED JANUARY 9, 1911.   No. 16,679.

1. **Indictment:** DUPLICITY. An indictment under section 6 of the criminal code should not charge in the same count that the defendant used and employed, and advised to be used and employed, instruments to procure an abortion, but such indictment is not demurrable for duplicity, since the allegation that defendant advised such instruments to be used and employed does not state an offense without alleging that some person other than the defendant committed the act; it is immaterial that the defendant advised the act which he committed himself, and such allegation should be rejected as surplusage.

2. **Indictment and Information:** ELECTION. If an information and an indictment are both pending in the same court at the same time charging the same party with the same offense, the prosecutor should be required to elect under which he will proceed, as required by section 435 of the criminal code; but that section has no application when the defendant has waived examination before the magistrate and has been held to appear in the district court, and has been indicted by the grand jury for the offense charged before the magistrate, and no information has been filed.

3. **Criminal Law:** WITNESSES: DISCRETION OF COURT. In a trial for felony, the prosecution should examine in the first instance such witnesses as have knowledge of the *res gestæ*. If such witnesses prove hostile to the prosecution, the court has discretion to allow such examination as will bring out the truth before the jury. When, however, the *res gestæ* is clearly proved, and the defendant is represented by competent counsel, the court has discretion to refuse to require the prosecution to call witnesses supposed to be interested in the defense.

Johnson v. State.

4. ———: INSTRUCTIONS. The trial court is not required to instruct the jury in the precise language requested by the defendant, though such request correctly states the law. If an instruction is given substantially stating the law as requested it is sufficient.

5. ———: DYING DECLARATIONS: QUESTIONS FOR COURT AND JURY. Whether a sufficient foundation has been laid to admit evidence of statements of a deceased person is a question of law for the court. If such evidence is admitted, it is for the jury to determine its reliability and weight.

6. ———: EVIDENCE: REVIEW. Unless it appears that the evidence in the trial of a criminal case is so deficient that all reasonable minds, if uninfluenced by passion or prejudice, must agree that there is reasonable doubt of the guilt of the defendant, a reviewing court cannot set aside the verdict of the jury as unsupported by the evidence.

ERROR to the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Affirmed.*

*L. C. Burr,* for plaintiff in error.

*William T. Thompson, Attorney General,* and *George W. Ayres, contra.*

SEDGWICK, J.

The defendant was prosecuted under section 6 of the criminal code. The defendant was found guilty. The sentence was imprisonment in the penitentiary, as provided by the statute, and he has brought the case here for review.

1. The defendant moved to quash the indictment for duplicity, and in other ways raised the question whether this indictment charges more than one offense against the defendant. The part of the indictment challenged charges that the defendant "unlawfully, feloniously and maliciously did then and there use and employ, and did then and there unlawfully and wilfully advise to be used and employed in and upon the body and womb of the said Amanda Mueller, mother of said vitalized embryo, certain instruments," etc., and section 6 of the criminal

code is as follows: "Any physician or other person who shall administer, or advise to be administered, to any pregnant woman with a vitalized embryo, or fœtus, at any stage of uterogestation, any medicine, drug, or substance whatever, or who shall use or employ, or advise to be used or employed, any instrument or other means with intent thereby to destroy such vitalized embryo or fœtus, unless the same shall have been necessary to preserve the life of the mother, or shall have been advised by two physicians to be necessary for such purpose, shall in case of the death of such vitalized embryo, or fœtus, or mother, in consequence thereof, be imprisoned in the penitentiary not less than one nor more than ten years."

It is insisted that to "use and employ" instruments to produce an abortion and to "advise to be used and employed" instruments for that purpose constitute two distinct offenses. It is contended by the state that but one offense is charged in the indictment, and that is, "causing the death of Amanda Mueller by means of certain things done to bring about an abortion," and that it was proper for the state "to allege the commission of the offense in any one or all of the ways inhibited by the statute." The defendant cites and apparently relies upon State v. Pischel, 16 Neb. 490, and Smith v. State, 32 Neb. 105. Both of these cases were prosecutions for selling liquors in violation of the statute. In State v. Pischel, the indictment alleged that the defendant on the 22d day of October, 1882, "and on all the several days between said 22d day of October in the year aforesaid and the first day of April" in the following year did "unlawfully and knowingly sell and give away malt, spirituous, and vinous liquors, and intoxicating drinks," etc. It was held that the indictment was too indefinite. "The act of selling any one of the kinds of liquors named in the law, as well as the act of giving away any of them under a pretext, is a crime. The indictment charges the whole." In Smith v. State, supra, the indictment was also held to be too indefinite. It was somewhat more definite than the one

above stated, but it charged that the defendant sold and gave away "spirituous, vinous, and intoxicating liquors." In both of these cases it was thought that the charge was too indefinite in that it did not state the kind of liquor sold, whether spirituous, malt or vinous, and did not state definitely when and to whom the sale was made. Neither of these cases is authority for the position taken by the defendant in the case at bar. In *Hubert v. State*, 74 Neb. 226, this court approved of the statement of the law in *United States v. Fero*, 18 Fed. 901, as follows: "Where a statute makes either of two or more distinct acts connected with the same general offense, and subject to the same measure and kind of punishment, indictable separately and as distinct crimes when committed by different persons, or at different times, they may, when committed by the same person at the same time, be coupled in one count as constituting one offense." Mr. Bishop states the law as follows: "If, as is common in legislation, a statute makes it punishable to do a particular thing specified, 'or' another thing, 'or' another, one commits the offense who does any one of the things, or any two, or more, or all of them. And the indictment may charge him with any one, or with any large number, at the election of the pleader; employing, if the allegation is of more than one, the conjunction 'and' where 'or' occurs in the statute." Bishop, Statutory Crimes (3d ed.), sec. 244. If one advises another to "use and employ" instruments to commit crime, he is accessory before the fact and is morally as culpable as one who uses the instruments under his advice. By this statute he is made legally a principal in the crime. The allegation that the defendant did "unlawfully and wilfully advise to be used and employed certain instruments" is too indefinite to constitute the charge of an offense under this statute. No one is alleged in the indictment to have performed the act, except the defendant himself, and therefore to give these words any effect or meaning in this indictment they must be construed as charging that the defendant

advised the operation which he himself performed; but this construction renders the allegation superfluous. If the defendant performed the operation himself, it would make no difference whether he advised it. We think, therefore, that the court might have considered these words superfluous and might have stricken them from the indictment. If the prosecutor had been in doubt as to whether the defendant performed the operation himself, or advised and procured some one else to perform it, he might have added a second count to the information charging the latter. In this count it would be necessary to show by proper allegation how the crime was committed, and who committed it, and that the defendant had advised the use and employment of instruments before the act. The allegation of advising the use of the instruments as alleged in this indictment is not good pleading, and under some circumstances might have been very prejudicial to the rights of the defendant.

At the close of the evidence the defendant requested the following instruction: "The jury are further instructed that there is no evidence in this action that defendant advised to be used and employed an instrument, or other means, with intent thereby to destroy a vitalized embryo or fœtus of which Amanda Mueller was pregnant, and you will therefore find him not guilty of such charge in said indictment." There was no evidence that the defendant advised the use of instruments, and the jury might properly have been so instructed. The court appears to have treated this part of the charge of the indictment as surplusage, and in instruction No. 4, given by the court on its own motion, the jury are told unequivocally that, in order to convict the defendant, they must find "that said defendant, William H. Johnson, did unlawfully, wilfully, and maliciously make an assault upon said Amanda Mueller, and that said defendant unlawfully, wilfully, and maliciously did use and employ in and upon the body and womb of said Amanda Mueller certain instruments or instrument." This ex-

cludes the possibility that the defendant might have been guilty by advising the use and employment of instruments, and appears to have fully protected the rights of the defendant in that regard.

2. The next contention of the defendant is that the court erred in not requiring the prosecutor to elect whether he would proceed upon the indictment found by the grand jury or upon information. It appears that immediately after the alleged offense complaint was made before a justice of the peace and a warrant issued against the defendant, who waived examination and was held to appear at the next term of the district court. At the next term the grand jury returned an indictment against the defendant and no information was filed. When the motion was made to require the state to elect how it would proceed, the court entered an order upon the journal in which it was recited that "the plaintiff in open court disclaims any purpose of prosecuting two actions against the defendant, and shows to the court that no information has been filed against the defendant in this court." It is clear that section 435 of the criminal code has no application under the circumstances in this case. That section provides: "If there be at any time pending against the same defendant two or more indictments for the same criminal act, the prosecuting attorney shall be required to elect upon which he will proceed." No doubt the statute would apply where both an information and an indictment were pending in the same court for the same act, but that was not the case here; no information having been filed. The grand jury having taken action and found an indictment, there was no occasion for any information and the practice pursued appears to be the proper one.

3. The defendant complains that the state did not place upon the witness-stand certain witnesses whose names were indorsed upon the indictment. Three witnesses were specified in this connection. Two of them were called by the defendant and fully examined and cross-examined

in the case. The third was the mother of the deceased girl, who was not examined as witness by either party. This question is discussed somewhat in *Argabright v. State,* 62 Neb. 402, and is mentioned in *Booton v. State,* 86 Neb. 114.

It is the duty of the prosecuting attorney to assist the jury in ascertaining the truth in regard to the charge against the defendant in a criminal prosecution, and it has been held that witnesses who can give evidence tending to show whether the crime charged has in fact been committed must be called by the prosecution in the first instance. In the case at bar the proof of the *res gestæ* is beyond question. There is no doubt from the evidence that instruments were used upon the deceased by some one with the purpose and intention of producing an abortion. It was not claimed that these three witnesses would add anything in their testimony to the evidence bearing upon that question. It is argued that without doubt the mother of the deceased could testify to confessions made to her as to the guilty party, and that such evidence might be obtained in a cross-examination. No case has been cited in which the prosecutor has been required to put a witness upon the stand for such a purpose. The trial court necessarily had great latitude of discretion in the matter of the examination and cross-examination of witnesses. The better practice undoubtedly is to examine in the first instance all witnesses who are supposed to have knowledge as to the principal facts constituting the offense charged, and generally also those who personally have knowledge of facts bearing directly upon the question of the guilt or innocence of the defendant. If these witnesses prove to be hostile to the state, or manifest a desire to shield the defendant, the prosecution will be allowed, in the discretion of the court, to press them more closely in order to bring the whole truth before the jury. When, however, the *res gestæ* is clearly proved, and the defendant is represented by competent counsel, it will not be considered an abuse of discretion on the part

of the trial court to refuse to require the prosecution to call witnesses supposed to be interested in the defense. If the defendant had found it necessary to call the mother of the deceased girl to prove important matters that could not otherwise be established, and it became apparent that she was more interested in convicting the defendant than in establishing the real facts in the case, the trial judge has ample discretion to allow such examination as should be found necessary to bring out the truth. There was clearly no abuse of discretion in refusing to require the prosecution to examine these three witnesses in chief, and nothing to indicate that the defendant was prejudiced by this action of the court.

4. The defendant complains that the court refused to give the jury a requested instruction as follows: "The law presumes that persons charged with a crime are innocent until they are proved by competent evidence to be guilty. To the benefit of this presumption the defendant is entitled, and this presumption stands as his sufficient protection, unless it has been removed by evidence proving his guilt beyond a reasonable doubt." We think the defendant is mistaken in saying in his brief that no instruction was given in the place of this one requested by him. The fifth instruction given by the court is to substantially the same effect.

The defendant requested the court to instruct the jury that, if they found certain things to be true in regard to the dying statement of the deceased, they should disregard the statement. This instruction was properly refused. It is for the court to say whether a sufficient foundation has been laid for proving a dying statement. In this case a sufficient foundation was laid, and it was properly admitted in evidence. It was for the jury to say how much force and effect should be given to this evidence, and that matter was properly submitted to the jury in the seventh instruction given by the court.

5. The remaining question to be considered in this case is as to the sufficiency of the evidence to support

the verdict and judgment. It has already been said that the evidence is conclusive that the death of the deceased was caused by the use of an instrument of some kind in attempting to produce an abortion. The theory of the defense was that the deceased used this instrument herself. The evidence was without contradiction that soon after the instrument was used a respectable physician was called to attend the deceased. He was not informed of the cause of her trouble, and treated her for several days, and he testified that when he found that she was already in a dying condition he informed her of that fact, and told her that she ought to make a true statement of the cause of her condition, and that she thereupon told him in detail the cause of her trouble, and that he then told her that she could not live and that she ought to tell the facts to her father, which she consented to do, and thereupon her father was called to the room and was told in her presence that she was in a dying condition, and she was told by the physician that she ought to repeat to her father what she had told to him. She then stated in the presence of her father and the physician, as they both testify, that the young man who was responsible for her condition had taken her to the office of this defendant, and that she went to his office three several times, and that at each visit he performed an operation upon her, and that the third time the operation was very painful. It appears that just before this statement was made another respectable physician had been called in consultation, and had advised that she be removed to a sanitarium and submit to an operation. This he said he advised upon the theory that there was always hope as long as there was life, and that he had known similar cases in which an operation had saved life. It appears that the deceased was aware of this advice, and, if she indulged the hope that this operation might save her life, this would tend to weaken the force of her dying statement; but it appears that when her father desired to have this operation performed she protested that it

was useless, as she was dying anyway, but finally consented at her father's request. Under these circumstances, as before stated, we think it was proper to allow this statement in evidence, leaving the question of its reliability for the determination of the jury.

The young man that she implicates was called as a witness by the prosecution. He testifies that he called upon the defendant at his office- and represented himself to be a married man, having been married but a short time, and that his wife was pregnant and desired to be relieved of it, and that the defendant told him that in such case a dilation was generally all that was necessary and that he would make an examination for a specified sum, and that, if the dilation was necessary, he would make an additional charge for that. Thereupon the witness told him that he would send his wife to the office, and in pursuance of that he sent the deceased there. His testimony conflicts with the dying statement of the deceased in two particulars. He denies all responsibility for her condition, but fails to explain his interest in the case, and also denies that he went with her to the office. The defendant testified that this young man came to his office and represented that he was recently married and that his wife was in trouble, but denied that he represented that she desired to be relieved of her pregnancy. He also testified that soon afterwards a young woman came to his office, representing that she was sent by her husband who had called upon him, and that he made an examination and informed her that he could not tell the cause of her trouble, and that she had better wait for another month and call again. He testified that she never called again, and denies that he used any instruments or in any way attempted to produce an abortion. He was examined and cross-examined at large, and made some statements upon the witness stand that may have been regarded by the jury as discrediting his testimony; and, while the evidence of his guilt is not so clear and satisfactory as to remove all doubt, we cannot say that reason-

able minds, if uninfluenced by passion or prejudice, must have agreed that the evidence was not sufficient to establish the guilt of the defendant beyond a reasonable doubt. If the jury are mistaken, the result is indeed deplorable, but the theory of the law is that there is no more certain method of ascertaining the truth in such criminal prosecutions than by the verdict of twelve fair and impartial men; and we find nothing in this record to indicate that this jury was actuated by any other motive or purpose than to ascertain the real truth of the matter.

Under such circumstances, the court is without power to interfere; and, finding no error in the record, the judgment of the district court is

AFFIRMED.