JULIUS A. JOHNSON V. STATE OF NEBRASKA.

FILED DECEMBER 31, 1929. No. 26935.

T. F. A. Williams, Edgar Ferneau, Fred G. Hawxby and Robert M. Armstrong, for plaintiff in error.

*C. A. Sorensen, Attorney General,* and *Irvin A. Stalmaster, contra.*

Heard before GOSS, C. J., DEAN, GOOD, THOMPSON, EBERLY and DAY, JJ., and REDICK, District Judge.

DEAN, J.

December 1, 1928, an information was filed in the district court for Nemaha county against Julius A. Johnson, defendant, wherein he was charged in four counts with the embezzlement of $11,681, during the months of March, April, and May, 1928, from the Farmers Security State Bank of Rohrs while he was cashier of the bank. The first count charges an embezzlement of $1,500, on or about April 13, 1928; the second an embezzlement of $81, on or about April 11, 1928; the third an embezzlement of $100, on or about March 17, 1928; and the fourth count charges an embezzlement of $10,000, on or about May 15, 1928, making the total sum of $11,681, as noted above, which was charged as having been embezzled by the defendant. The jury found the defendant guilty on all of the above named counts. The court thereupon sentenced defendant to serve from one to six years in the penitentiary on each count of the information, the sentence to run concurrently. The defendant prosecutes error.

It must first be noted that in respect of the fourth count the state, in its brief, concedes that "not enough witnesses whose accounts were short were called to establish the aggregate" sum of $10,000, named in the fourth count of the information. It follows, of course, that the prosecution of the fourth count, having been abandoned by the state in its argument, need not here be noticed further.

In behalf of the defendent his counsel contend that his mentality was so defective that defendant was unable to distinguish between right and wrong at the time when he committed the acts complained of, and that the judgment should therefore be reversed. And in respect of defendant's mental condition at all times material to this inquiry, the evidence of two physicians was submitted to the jury, and it appears from their evidence that defendant was suf-

fering from a tumor on his brain at the time in question and that he underwent an operation therefor shortly after the acts complained of are charged as having been committed. It appears, however, that the tumor was not removed because of the fact that, as advised by both physicians, such an operation would endanger his life. And both physicians also expressed the opinion that the defendant, at the time in question, did not have the ability to distinguish between right and wrong. The state, however, offered the evidence of six or seven nonprofessional witnesses, mostly neighbors of defendant, and they testified to the contrary in respect of mentality.

A bank examiner testified that, when he went to the bank to make an examination of its condition shortly before the defendant was apprehended, the defendant "seemed to know just what he was doing." He further testified: "Q. State, when you called upon him for explanations of certain items, the manner of his replies and the conversation with relation thereto. A. The answers usually came very quickly and very plausibly as to the subject that I was asking about." From the evidence of this witness, and other witnesses on this feature, it appears that sufficient competent evidence was introduced to warrant a finding by the jury that the defendant could distinguish right from wrong at the time of the commission of the offenses. To substantially the same effect was the evidence of the cashier of a bank in a neighboring town. This witness testified that they at one time worked in the same bank and that he observed no change in defendant's manner or general conduct or appearance since the time when they formerly worked together, and that in his opinion the defendant then, and at the time of the trial, knew right from wrong.

A merchant of Rohrs, who had lived there 40 years, was president of the Rohr bank four years and also a member of the board of directors. He testified that his store was located next to the bank building where defendant was employed and that defendant was the only person in charge of the bank during this four-year period. He also

testified that the defendant's conduct was then peculiar in some respects, but that he did not see any difference in the way he had always done his work, and that, in his opinion, defendant's mentality was such that he could distinguish between right and wrong during all the time of his acquaintance with him.

Another witness saw defendant nearly every day and in his opinion, defendant was apparently always the same and could distinguish right from wrong. The evidence of another witness was that defendant absolutely knew right from wrong; that he attended school with him and at a later period they worked in the same bank, and that "Gus (the defendant) while he was a nervous dispositioned fellow and his dress was always reasonably good and he had a peculiar way of handling business perhaps that was his own, natural, but then he handled it." In the expressed opinion of this witness, the defendant was able to distinguish right from wrong in respect of the acts complained of herein.

A banker in a neighboring city, and at or about the time in the employ of the guaranty fund commission, testified that his acquaintance with the defendant continued for about 25 years before defendant was complained against. When interrogated as to whether the books of the bank would balance where "an individual submits a check to the bank, upon the bank, which the bank pays and charges to his account in the sum of $1,500 and gives for that check a certificate of deposit for the bank for $1,500, while the books of the bank contain no record of the certificate of deposit," he answered that the books would not balance, and "the cash should be long," and that, to make the books balance, $1,500 in cash would have to be taken from the bank. He also testified that in one instance $81 was handed to defendant for deposit by one of the bank's patrons, for which a duplicate deposit slip was given but no entry was made in the bank books of this deposit. He also testified that a shortage of $100 appeared in another account and without the depositor's knowledge. And in another in-

stance it appears that defendant took $500 out of a depositor's account without the knowledge of the depositor.

In respect of the $81 deposit, above referred to, the depositor testified that the defendant gave her a duplicate deposit slip therefor, but that the $81 was never entered in her passbook. Another testified that he deposited a check for $1,500 for which he received a duplicate deposit slip from the defendant, but that no entry was ever made on the bank books of the deposit so made by him. It also appears from the evidence of other witnesses that their passbooks disclosed withdrawals of money from their accounts in amounts for which they did not write checks, and that their passbooks were balanced by the defendant.

Certain witnesses testified on defendant's part that he was a man in good repute in his home community. Others testified that his mentality was failing. But the case was tried in defendant's home community before a jury which was composed of men, so far as the record discloses, who were impartial and unbiased as between the parties.

"It is elementary that where, in a criminal prosecution, the evidence conflicts in respect of material facts, the credibility of the respective witnesses is for the jury." *Baker v. State,* 112 Neb. 654.

It clearly appears that the defendant had abundant opportunity to divert the money of the depositors in the bank and to appropriate it to his own use without immediate detection. The charge of defendant's malfeasance is established beyond a reasonable doubt and the verdict is sufficiently supported by the evidence. We have held that:

"Unless it appears that the evidence in the trial of a criminal case is so deficient that all reasonable minds, if uninfluenced by passion or prejudice, must agree that there is reasonable doubt of the guilt of the defendant, a reviewing court cannot set aside the verdict of the jury as unsupported by the evidence." *Johnson v. State,* 88 Neb. 328.

Defendant complains of the court's refusal to give certain instructions, and also of certain instructions given by the court. We have examined the instructions and, when

considered in their entirety, we do not find prejudicial error.

The judgment of the trial court must be and it hereby is affirmed in respect of all counts except the fourth which the state, as herein noted, concedes is not supported by sufficient evidence to sustain a conviction. In all other respects the judgment is affirmed.

AFFIRMED IN PART.