BAKER v. STATE OF INDIANA.

[No. 29,297. Filed December 13, 1956.]

56

*Edwin J. Ryan* and *Albert W. Ewbank,* of Indianapolis, for appellant.

*Edwin K. Steers,* Attorney General, and *Owen S. Boling* and *Robert S. Baker,* Deputy Attorneys General, for appellee.

EMMERT, J.—This is an appeal from a judgment on a finding by the court that the appellant was guilty of robbery as charged in an affidavit, upon which he was sentenced to the Indiana State Prison for a term not less than ten (10) nor more than twenty-five (25) years, and disfranchised and rendered incapable of holding any office of trust or profit for ten (10) years. The assignment of errors here charges the court erred (1) in overruling appellant's motion for new trial, and (2) the court abused its discretionary power in fixing excessive bond on appeal.

The affidavit, filed February 15, 1954, charged that appellant on or about the 3rd day of February, 1954, robbed Mary Kriech of $4.00 in money. Appellant was represented by counsel, entered a plea of not guilty, and also filed a special notice of alibi pursuant to Chapter 228 of the 1935 Acts, §§9-1631 to 9-1633, Burns' 1956 Replacement. He waived a trial by jury, and the cause was submitted and tried before a special judge. The motion for a new trial questioned the sufficiency of the evidence to sustain the finding.

We have carefully read and reread the entire bill of exceptions in this cause, since this conviction can only be sustained by holding the dubious testimony of Mary Kriech as to the identity of the appellant, uncorroborated as to any material essential, and contradicted by unimpeached evidence of an alibi, was sufficient to prove the appellant guilty beyond a reasonable doubt of the offense charged.[1]

In reviewing the evidence in this appeal it should be remembered that "Some of the most tragic miscarriages of justice have been due to testimonial errors in this field, the error being chiefly due to imperfect Recollection, with the occasional further complication of defective Perception and of Suggestion." 3 Wigmore, Evidence (3rd Ed.) §786a, p. 163. This court should be particularly vigilant in appreciating the danger exem-

---

1. For some unexplained reason the State persisted in an effort to disregard the clear provisions of Chapter 228 of the 1935 Acts, §§9-1631 to 9-1633, Burns' 1956 Replacement, concerning the defense of alibi, even after the State had been ordered to make its statement more specific as to the time and place of the alleged offense. In *Pearman v. State* (1954), 233 Ind. 111, 119, 117 N. E. 2d 362, we noted that the alibi statute "puts duties upon the State as well as the defendant," and that "the State must be required to discharge its duties, unless good cause be shown for failure so to do." However, appellant's objections were premature and not made to any question asked any witness. 64 C. J. 177, §198; 88 C. J. S. 242, §119; Flanagan, Wiltrout & Hamilton, Ind. Tr. & App. Pr. §1993, p. 488. See Criminal Law: Statutory Regulation of Alibi Defense Through Notice Requirements, 30 Ind. L. Jl. p. 106, *et seq.*

plified by the erroneous conviction of Nancy Louise Botts, the shocking history of which is recited in Chapter 144 of the 1939 Acts.

Section 9-1806, Burns' 1956 Replacement [Acts 1905, ch. 169, §261, p. 584], as well as cases too numerous to cite, provide "A defendant is presumed to be innocent until the contrary is proved. When there is a reasonable doubt whether his guilt is satisfactorily shown, he must be acquitted." "The scintilla of evidence rule does not obtain in this jurisdiction. The settled rule in this state requires that the material facts in issue be supported by some evidence, and this question is one of law reviewable on appeal. *Nordyke & Marmon Co.* v. *Whitehead* (1914), 183 Ind. 7, 106 N. E. 867.

"This court will not weigh evidence, nor will it say that a mere spark or trifle is sufficient to sustain an issuable fact. *Wright* v. *Bertiaux* (1903), 161 Ind. 124, 129, 66 N. E. 900." *Sullivan* v. *State* (1928), 200 Ind. 43, 47, 48, 161 N. E. 265.[2] To prove an essential allegation beyond a resonable doubt requires more evidence than to prove an allegation by preponderance of the evidence. *Kempf* v. *Himsel* (1951), 121 Ind. App. 488, 516, 98 N. E. 2d 200.[3] If the evidence merely tends to establish a suspicion of guilt, it is not sufficient to sustain a conviction. *Robertson* v. *State* (1952), 231 Ind. 368, 108 N. E. 2d 711; *Steffler* v. *State* (1952), 230 Ind. 557, 104 N. E. 2d 729;

2. ". . . a mere scintilla of evidence on any essential allegation of the offense charged is insufficient to sustain a conviction. *Sullivan* v. *State* (1928), 200 Ind. 43, 161 N. E. 265." *Carrier* v. *State* (1949), 227 Ind. 726, 730, 89 N. E. 2d 74.

3. "In other words, a prudent man, compelled to do one of two things affecting matters of the utmost moment to himself, might, and doubtless would, do that thing which a mere preponderance of evidence satisfied him was for the best, and yet such a conviction would fall far short of that required to satisfy the mind of a juror in a criminal case." *Bradley* v. *State* (1870), 31 Ind. 492, 504, 505.

*Todd* v. *State* (1951), 230 Ind. 85, 90, 101 N. E. 2d 922; *Hiner* v. *State* (1925), 196 Ind. 594, 149 N. E. 168. Mere opportunity to commit crime is insufficient to sustain a conviction. *Osbon* v. *State* (1938), 213 Ind. 413, 424, 13 N. E. 2d 223.[4] "It is not enough that evidence merely tends to support the conclusion of guilt, it must support it." *Martin* v. *State* (1897), 148 Ind. 519, 521, 47 N. E. 930.

In considering the standard by which we review the evidence where it is challenged as being insufficient to sustain a verdict or finding, this court has often said there must be substantial evidence of probative value before we can decide an accused has been proved guilty beyond a reasonable doubt. "This last rule places the evidence before the court on appeal, not for the purpose of weighing it, or for the purpose of determining the facts when there is actual conflict, but for the purpose of deciding, as a question of law, whether or not there is substantive evidence in support of the required material facts essential to a conviction. It is not enough to sustain a conviction that the evidence, when given full faith and credit, may warrant a suspicion or amount to a scintilla. *Sullivan* v. *State* (1927), 200 Ind. 43, 47, 161 N. E. 265; *Cleveland, etc., Ry. Co.* v. *Wynant* (1893), 134 Ind. 681, 686, 34 N. E. 569.

". . . We use the word 'substantial' as meaning more than 'seeming or imaginary.' " *Sylvester* v. *State* (1933), 205 Ind. 628, 631, 632, 187 N. E. 669.

---

4. "The law requires more than mere opportunity. It requires evidence to prove guilt beyond a reasonable doubt. It will not permit a mere possibility because of opportunity to take life or liberty. It does not require direct evidence, but if not direct, then the circumstantial evidence must be such as to exclude every other reasonable hypothesis except that of guilt." *Osbon* v. *State* (1938), 213 Ind. 413, 424, 13 N. E. 2d 223.

"There must be some substantial evidence of probative value from which a reasonable inference of the guilt of the defendant may be drawn." *Todd* v. *State* (1951), 230 Ind. 85, 90, 101 N. E. 2d 922, *supra.* "This court cannot weigh evidence, but must determine whether there is substantial evidence of probative value from which a jury could reasonably have inferred that appellant was guilty of the crime." *Stice* v. *State* (1950), 228 Ind. 144, 149, 89 N. E. 2d 915. See also *Christen* v. *State* (1950), 228 Ind. 30, 39, 40, 89 N. E. 2d 445; *Mattingly* v. *State* (1952), 230 Ind. 431, 438, 104 N. E. 2d 721; *Hansen* v. *State* (1952), 230 Ind. 635, 639, 106 N. E. 2d 226; *Harrison* v. *State* (1952), 231 Ind. 147, 168, 106 N. E. 2d 912; *Bowens* v. *State* (1952), 231 Ind. 559, 562, 563, 109 N. E. 2d 91; *Shutt* v. *State* (1954), 233 Ind. 169, 117 N. E. 2d 892.

The rule of law defining proof beyond a reasonable doubt has been well settled for many years and requires each juror to be so convinced by the evidence that as a prudent man he would feel safe to act upon such conviction in matters of the highest concern and importance to his own dearest and most important interests, under circumstances where there was no compulsion or coercion upon him to act at all. *Chambers* v. *State* (1953), 232 Ind. 349, 356, 111 N. E. 2d 816; *Morgan* v. *State* (1921), 190 Ind. 411, 130 N. E. 528; *Bradley* v. *State* (1870), 31 Ind. 492. The standard of a prudent man is that of a reasonable man. If different persons might reasonably arrive at different conclusions from that reached by the trial jury, the verdict will not be set aside for that reason. *Davidson* v. *State* (1933), 205 Ind. 564, 576, 187 N. E. 376. On the other hand if no reasonable man could find the evidence has proved an accused guilty beyond a reasonable doubt, a verdict would not be sustained by sufficient evidence.

When we carefully examine the cases decided in the long history of this court which have reversed convictions because they were not sustained by sufficient evidence, it is apparent that the court was applying a test that some material allegation had not been proved by substantial evidence so that no reasonable man could say this issue had been proved beyond a reasonable doubt. *Sylvester* v. *State* (1933), 205 Ind. 628, 187 N. E. 669, *supra*.[5]

In the leading case of *State* v. *Gregory* (1936), 339 Mo. 133, 143, 96 S. W. 2d 47, the court analyzed the rule on review to be as follows: "Now since the test of substantial evidence is whether a jury reasonably could find the issue thereon, the result must depend in some measure upon the degree of persuasion required. In a criminal case liberty and sometimes life are involved, and there cannot be a conviction except upon a finding of guilt beyond a reasonable doubt. Necessarily, therefore, it becomes the duty of an appellate court as a matter of law to decide whether the evidence was sufficient to induce a belief of the defendant's guilt beyond a reasonable doubt in the minds of jurors of average reason and intelligence. And in resolving that question the court undoubtedly can pass on the credibility of the testimony to the extent of determining whether it was substantial in the sense above explained. In no other way can the rights of the defendant be protected. It would be an incongruous situation if the

---

5. The court, in reviewing the conviction in this case, used the following language:

"The only evidence connecting appellant in any manner with the stolen automobile came from the mouth of a single witness. That witness, the admitted thief, admitted highway robber and admitted deserter from the navy, was, as to each of his material statements concerning appellant's connection with the stolen car, directly contradicted by himself under oath by disinterested witnesses, by circumstantial evidence, and by physical facts." *Sylvester* v. *State* (1933), 205 Ind. 628, 630, 631, 187 N. E. 669.

court were compelled to let a conviction stand as being supported by evidence warranting a verdict of guilt beyond a reasonable doubt, when *for any reason* made manifest on the record the court is convinced the evidence reasonably could not support a conviction." This standard is supported in many jurisdictions. *State* v. *Williams* (1947), 111 Utah 379, 386, 180 P. 2d 551; *Johnson* v. *State* (1911), 88 Neb. 328, 337, 129 N. W. 281; *McNeil* v. *State* (1932), 104 Fla. 360, 139 So. 791; *Ladner* v. *State* (Miss. 1942), 9 So. 2d 878; *State* v. *Spradley* (1954), — W. Va. —, 84 S. E. 2d 156; *Wright* v. *Commonwealth* (1954), 196 Va. 132, 137, 82 S. E. 2d 603.[6] See also *State* v. *Olavieri* (1937), 123 Conn. 678, 195 Atl. 181; *State* v. *Gavle* (1951), 234 Minn. 186, 48 N. W. 2d 44; *Commonwealth* v. *Shea* (1949), 324 Mass. 710, 713, 88 N. E. 2d 645; *State* v. *Urbaytis* (1951), 156 Ohio St. 271, 277, 102 N. E. 2d 248.

Mrs. Mary Kriech, who on the date of the crime charged resided at 335 North Bradley Street in the City of Indianapolis, was going home from work about 6:00 o'clock that evening. She had gone to a bakery to make some purchases, and was walking on Bradley Street toward her home when she heard someone cough and when she turned around she saw a strange man. She crossed the street and noticed that he crossed also. She was walking fast, and when she got near her home he "rushed up behind

---

6. "When the question raised on appeal is whether the trial court erred in overruling a motion to set aside the verdict of a jury as contrary to the evidence or without evidence to support it, this court will affirm the judgment entered on the verdict, unless 'it appears from the evidence that such judgment is plainly wrong or without evidence to support it.' Code, §8-491. We review the evidence not with respect to what action we might have taken as members of the jury, but as to whether the evidence justified the jury, as reasonable men, in finding the defendant guilty." *Wright* v. *Commonwealth* (1954), 196 Va. 132, 137, 82 S. E. 2d 603.

me and grabbed me and stuck something in my back, which felt like a gun, and told me not to scream or run, that he would shoot me if I did, and that he wanted my money." She gave him her purse and he made her go between two houses where from a window the light shown upon them, and he took the money from her purse, and asked her if she had any money on her body, to which she answered "no." He asked her if she had any jewelry and she answered "no." She escaped and ran to the neighbors' porch, knocked on the door and screamed, the neighbors let her in, and the robber ran away. At the trial she said he had a white handkerchief tied around his face, and this fell down when they were between the houses and she could see his face. Her testimony on the dropping of the mask was contradicted by other statements by her as later detailed. He wore a light topcoat and a light billed hunting cap. The bill of the cap was not down low and she saw his hair on the side of the cap.

Later the same evening by the side of a house at 1617 East Michigan Street, which was two miles or more from the site of the robbery, appellant was being physically detained by three citizens when police officers arrived and arrested him for disorderly conduct, and placed him in a car. At the time he was arrested he was wearing a light colored topcoat and a khaki colored cap with a bill. He had four $1 bills and thirty-two (32) cents in change in his pockets, a white handkerchief in his right-hand coat pocket rolled in a tight wad, which had some substance in it. The state made no effort to determine what this was, or to enlighten the court thereon. He was taken to 326 North Hamilton Street where two girls identified him as the man they had seen earlier that night between 6:30 and 7:00 o'clock on New York Street between Jefferson and Hamilton Streets. This was at least a mile and a

quarter from the place of the robbery. The police officers had been looking for a man who allegedly had exposed his person to some young girls. Appellant was taken to police headquarters, and about two hours after the robbery Mrs. Kriech went to police headquarters, looked at the prisoner sitting in a room with a policeman, and said he was the man who had robbed her. Such police procedure is not to be commended. 3 Wigmore, Evidence (3rd Ed.) §786a, p. 164. Appellant did not testify at his trial.

Mrs. Kriech testified that appellant came to her house in August and in substance asked her not to testify against him because his record was against him and that she never said she wasn't positive about the man who held her up. Mrs. Baker, wife of appellant, testified that she and her husband went to the home of Mary Kriech and her husband and in the presence of all four, Mrs. Kriech said, " 'well, Mrs. Baker, you can rest assured that I would never get on the stand and swear that your husband, or any other particular man, held me up because I didn't see the man. He had a mask, a handkerchief, over his face and I didn't see his face so I wouldn't take that chance of accusing an innocent man.' And she said there was only two individuals that know definitely who the man was and that was God and the man himself. . . .

"Both Mr. and Mrs. Kriech kept saying, 'well, what can we do to help you' and we said 'only tell the truth' and she said 'you can rest assured I would never accuse anybody because, as I said before, there was only two people that knew and that's God and the man himself, and since I didn't see the man's face, I couldn't identify him.' " The State never put Mrs. Kriech or her husband on the stand in rebuttal to contradict one word of this testimony. The inference to be drawn from this record is that if the State had put the husband of Mrs. Kriech

on the witness stand to testify as to this conversation, he would have admitted it was true. *Johnson* v. *State* (1927), 199 Ind. 73, 155 N. E. 196; *Hiner* v. *State* (1925), 196 Ind. 594, 149 N. E. 168, *supra;* 2 Wigmore, Evidence (3rd Ed.) §§285-290. Moreover, at the habeas corpus hearing on February 20, 1954, just seventeen days after the robbery, Mrs. Kriech testified as follows:

"Q. You didn't see this man's face?
A. Not his complete face—just his eyes. The light from the window in the house I ran into was shining on us.
Q. And you say he had on a Hunter's cap and a light coat?
A. Light coat.
Q. And when the police, after they came out to investigate, they didn't take you to headquarters at that time?
A. Not right at the time they were called. They did, later . . ."

On September 9, 1954, the appellant filed his motion of intention to offer a defense of alibi, wherein he stated that at the time stated in the charge he was on the date named employed at the Rytex Paper Company, that he left work at 4:45 P.M., and went to the Indianapolis Power & Light Company where he paid his electric bill; that he met his wife there and they drove to the home of Mr. R. D. Moore, 6225 East Thompson Road near Beech Grove, where they arrived at about 5:45 to 5:50 P.M., that they ate dinner there and visited there till about 6:30 P.M., that thereafter they drove to the entrance of Arsenal Technical High School where he left his wife about 6:50 P.M. Mr. R. D. Moore testified as to the visit and dinner and that appellant and his wife left his home sometime about 6:30 P.M. Mrs. Moore was crippled with arthritis and could not be a witness. Mrs. Baker also testified as to the trip to the Moores, the dinner and that they left about 6:30 P.M. and parked the car at Tech High

School about 5 minutes till 7:00 P.M. The paid light bill was offered in evidence, but excluded on objection by the State. This testimony by Mr. Moore and Mrs. Baker was uncontradicted and unimpeached by any substantial evidence of probative value, nor did the State attempt to do so.

There was other testimony concerning some alleged acts of exhibitionism the night of February 3rd, and appellant's apprehension for one of these acts, but we fail to see how this evidence is relevant to the issues under the charge of robbery. He was not charged with public indecency under §10-2801, Burns' 1956 Replacement.

In *People* v. *Gold* (1935), 361 Ill. 23, 31, 32, 196 N. E. 729, the Supreme Court of Illinois reversed a conviction based on dubious identification which was contradicted by unimpeached evidence of an alibi, and reasoned as follows:

"An identification made by a stranger without a sufficient opportunity to definitely fix features or characteristics must be an opinion or conclusion of the identifying witness. The burden was on the People not only to prove, beyond a reasonable doubt, the commission of the crime charged, but they were further required to prove in the same degree that defendant was the person who committed it. (*People* v. *Peck,* 358 Ill. 642; *People* v. *Fiorita,* 339 id. 78.) Where the conviction of a defendant rests upon an identification which is doubtful, vague or uncertain and which does not produce an abiding conviction of guilt to a moral certainty it should be reversed. . . . Neither can we disregard the evidence of alibi where the only evidence contradicting it rests upon the identity of defendant as the man who took the machine. (*People* v. *Peck, supra; People* v. *DeSuno, supra.*) While the identification and whereabouts of defendant at the time the crime was committed are questions for the jury, yet where from the entire record there is reasonable doubt of the guilt of

defendant a judgment of conviction cannot be permitted to stand. *People* v. *Burr*, 356 Ill. 452; *People* v. *McPheron*, 354 id. 381; *People* v. *Steinbuch, supra*."

See also *People* v. *Gooden* (1949), 403 Ill. 455, 86 N. E. 2d 198; *People* v. *Buchholz* (1936), 363 Ill. 270, 2 N. E. 2d 80; *People* v. *Burr* (1934), 356 Ill. 452, 190 N. E. 902; *People* v. *Steinbuch* (1923), 306 Ill. 441, 138 N. E. 137; *People* v. *Kelley* (1937), 367 Ill. 318, 11 N. E. 2d 366.

From an examination of the entire record in this case we are unable to see how any prudent man could find appellant had been proved guilty beyond a reasonable doubt. In such a case the issue becomes one of law for the decision of this court. *Lee* v. *State* (1954), 233 Ind. 176, 118 N. E. 2d 115; *Osbon* v. *State* (1938), 213 Ind. 413, 428, 13 N. E. 2d 223, *supra*. The finding was contrary to law, and a new trial should have been granted for this cause.

The trial court fixed the amount of the bail bond for appeal in the sum of $25,000, which appellant asserts was unreasonable.[7] Section 9-2315, Burns' 1956 Replacement. On motion of appellant, he was returned for a hearing on the amount of bail, which was held on March 15, 1955. But the evidence heard on appellant's petition was not brought into the record by any special bill of exceptions. Without this evidence in the record we are not in a position to review the action of the trial court to determine whether it was reasonable as required by the statute.

Other asserted errors may not arise on a retrial and need not be discussed now.

---

7. "The court in which such petition to be admitted to bail is filed shall fix such bail, in such reasonable amount, . . . ." Section 9-2315, Burns' 1956 Replacement.

Judgment reversed, and new trial ordered.

Achor, C. J., Arterburn, Bobbitt and Landis, JJ., concur.

NOTE.—Reported in 138 N. E. 2d 641.