Donald DOWDELL, Appellant-Defendant,

v.

STATE of Indiana, Appellee-Plaintiff.

No. 2–581A176.

Court of Appeals of Indiana,
Fourth District.

Dec. 8, 1981.

Andrew P. Sheff, Bennett & Sheff, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

**2**

CONOVER, Judge.

Donald R. Dowdell was convicted of Theft,[1] after a bench trial in Marion County Municipal Court, and sentenced to two years in prison. Dowdell was charged with knowingly exerting unauthorized control over the property of William Coleman. Dowdell appeals the conviction and raises the following issues for review:

I. Did the trial court commit reversible error by admitting the testimony of an eleven year old boy?

II. Was the evidence presented at trial sufficient to sustain a conviction for Theft?

We affirm.

FACTS

At about 2:00 p.m. on August 16, 1980, Donald Dowdell spoke with his sister, Terry Grady, at her residence in Indianapolis. This was witnessed by Anthony Phillips, an eleven year old boy who lives next door to Grady. At that time, both Grady and Phillips testified Dowdell entered the house. Shortly thereafter, Dowdell, Grady and an unidentified man departed in a green automobile. Grady testified Dowdell gave her a ride to her grandmother's home.

Phillips testified he was standing on the front porch of his home later in the afternoon of August 16. At that time, Phillips heard a sound like breaking glass in back of the Grady/Coleman residence and a few minutes later observed Dowdell exit through the front of the Grady residence carrying a clock and a television set. Dowdell re-entered the house before departing in the green car he had driven earlier. The same unidentified man accompanied him.

Terry Grady and William Coleman returned home later that evening and discovered certain items of personal property were missing from their residence. During her testimony Ms. Grady gave the following account of her return to the house:

"Q. When you returned to your home that evening, can you tell us what the situation was at your house?

"A. William opened the door and he said, I—

MR. WADE: I object, Your Honor, testimony that, she's testifying as to what someone might have said to her and he's present here in Court, he can testify to any conversations they might have had.

THE COURT: He's also subject to cross examination. I'll overrule your objection.

"A. William said, 'my stuff is gone'. So, he opened up the door, I called the police and I went next door over to their house to ask them had they seen anybody going in and out of our house. And, he said, 'yes'. I said, people that picked him up earlier, you know.

"Q. When you're referring to he, you're referring to the gentleman (Phillips) who just testified, right?

"A. Yes."

Apparently, Dowdell learned he was implicated in the theft. Grady testified Dowdell came by the house again to tell her he did not take her property. Based on information given to police by Phillips, Dowdell was arrested and charged with Theft. The information filed against Dowdell reads in part:

"Donald Dowdell did unlawfully and knowingly exert unauthorized control over the property of William Coleman, Terry Grady . . . (a description of the property follows) . . . with intent to deprive William Coleman of any part of the value of said property."

On January 20, 1981, Donald Dowdell was convicted of Theft and sentenced to two years at the Indiana Department of Corrections, Marion County Jail, one year suspended.

---

1. Ind.Code 35–43–4–2 Theft; receiving stolen property.

"Sec. 2.a. A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony."

## I. WITNESS COMPETENCY

■ The law of Indiana presumes testimonial competence in all children over the age of ten.[2] If the defendant had felt Anthony Phillips was incompetent to testify, an objection should have been made at trial. Since no such objection was made, the defendant can not raise that issue now. *Wedmore v. State*, (1957) 237 Ind. 212, 143 N.E.2d 649.

## II. SUFFICIENCY OF THE EVIDENCE

When reviewing sufficiency of the evidence, this court considers the evidence most favorable to the verdict, together with all reasonable inferences which may be drawn from that evidence, *McCormick v. State*, (1978) Ind.App., 382 N.E.2d 172. If there is substantial evidence of probative value to support each element of the offense, the judgment will be affirmed. *Taylor v. State*, (1979) Ind.App., 391 N.E.2d 1182. In reviewing the sufficiency of the evidence, this court does not judge the credibility of witnesses nor weigh the evidence.

### A. "Of Another Person"

■ Dowdell argues the record does not present a quantity of evidence that would sustain a finding that the items allegedly stolen were property "of another person." We disagree. It is not necessary to prove absolute ownership of the property. Ind. Code 35–41–1–2 Definitions defines "property of another person" to include possessory or proprietary interests.[3]

Our Supreme Court has said that

"[I]t need not be proven that the absolute ownership of the property allegedly taken be in the person alleged to be the owner, but it is sufficient if the evidence shows him to be in lawful possession of the property. It is of little concern whether he holds as bailee, agent, trustee, or personal representative."

*Gunder v. State*, (1968) 250 Ind. 689, 238 N.E.2d 655; *See also Gregory v. State*, (1973) 259 Ind. 652, 291 N.E.2d 67.

■ The trial record sufficiently supports a finding of ownership of the property by William Coleman. He was present in Court and subject to cross-examination. Although Coleman did not take the stand, testimony was offered that he identified property missing from the home as his own.[4] The record also discloses other facts adding to the finding of ownership. Coleman was a resident of the home from which items of personal property were taken. Even though he was a co-tenant of the residence he did exercise enough of a proprietary interest over the contents to be a possessor within the meaning of the statute.

### B. "Unauthorized Control"

■ Proof that the defendant exercised unauthorized control over the property allegedly stolen is a material element of the crime of theft. *Hopkins v. State*, (1973) 155 Ind.App. 195, 291 N.E.2d 914. Each material element of a crime must be proven beyond a reasonable doubt. *Alexander v. State*, (1973) 158 Ind.App. 698, 304 N.E.2d 329. Indeed the reasonable doubt standard was the rule of law in this state[5] long before the United States Supreme Court announced the constitutional dimension of the reasonable doubt standard.[6]

---

2. Ind.Code 35–1–31–3 "Who are competent witnesses.—The following persons are competent witnesses:

First. All persons who are competent to testify in civil actions."

"34–1–14–5 Who are incompetent.—The following persons shall not be competent witnesses:

.    .    .    .    .

Second. Children under ten [10] years of age, unless it appears that they understand the nature and obligation of an oath."

3. Ind.Code 35–41–1–2

4. This was admissible hearsay under the rule of *Patterson v. State*, (1975) 263 Ind. 55, 324 N.E.2d 482.

5. *Hiler v. State*, (1858) 4 Blackf. 552

6. "Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 365, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970).

**4**

As a corollary to the reasonable doubt rule, our Supreme Court has held that the State must present substantial evidence of probative value before an accused can be proven guilty beyond a reasonable doubt. *Baker v. State*, (1956) 236 Ind. 55, 138 N.E.2d 641. The word "substantial" is used in a sense that means more than "seeming or imaginary." *Id.* We keep these rules in mind as we turn to the question of unauthorized control.

Dowdell argues the record contains no evidence germane to the issue of unauthorized control. We do not find this to be true. The record clearly supports Dowdell's control over the property by eyewitness testimony. This will support an inference that when a defendant is seen in control of property shortly before its theft is reported, the nonconsent of the owner may be presumed. *Phillips v. State*, (1974) 162 Ind. App. 314, 319 N.E.2d 672.

In the *Phillips* case, the appellate court noted that there was no express statement by any witness denying that the defendant was authorized to exercise control over the property. *Id.* Nevertheless, the court found that the trial testimony, taken as a whole, was "replete with the implication that the control he exercised was unauthorized." *Id.* We find that statement applicable to the instant case.

Not only did an eyewitness testify that Dowdell removed property from the residence of Coleman and Grady, Terry Grady testified that Dowdell did not have authorization to remove the property from the home. When we add to this the statement of William Coleman, "My stuff is gone," the presumption of non-consent is strengthened.

Further, the record indicates Dowdell was aware that no one was authorized to take property from the house. Grady testified that when Dowdell learned the police were looking for him he came to her and denied taking the missing items. The inference to be drawn from this denial is that Dowdell knew no consent had been given to remove property from the Coleman/Grady home. The conclusion extracted from these facts can only be that Dowdell exercised unauthorized control over the property of William Coleman and Terry Grady.

Having found that each essential element of the crime of theft was proved by substantial evidence, beyond a reasonable doubt, from the evidence most favorable to the State; we will not disturb the judgment of the trial court.

Affirmed.

MILLER, P. J., and YOUNG, J., concur.