**Gordon TROTTER, Appellant (Defendant),**

v.

**STATE of Indiana, Appellee (Plaintiff).**

No. 2–884–A–262.

Court of Appeals of Indiana,
Second District.

Oct. 29, 1985.

Dissenting Opinion Oct. 31, 1985.

William L. Soards, Soards and Carroll, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. of Ind., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

BUCHANAN, Chief Judge, dissenting.

The hobgoblin of inconsistency has caught up with me again. Perhaps I am a kindred spirit of the late Senator Everett Dirksen of Illinois, who, when criticized for some of his drastic changes of position, said "I am a man of principle, and one of my basic principles is flexibility." By a memorandum decision which I authored, this court reversed defendant-appellant Gordon Trotter's (Trotter) conviction for burglary, a class B felony,[1] while affirming his conviction for theft, a class D felony.[2] *Trotter v. State* (1985), Ind.App., 478 N.E.2d 1258.

Although my colleagues in the Second District, Judges Sullivan and Shields, do not agree with me, I must recant from that portion of the opinion which reversed Trotter's burglary conviction. The reversal was, in my opinion, the product of an impermissible invasion of the trier of fact's exclusive duty to weigh the evidence and assess the credibility of witnesses.

As related in our earlier decision, the facts most favorable to the State which pertain to Trotter's burglary conviction reveal that on September 8, 1983, Melvin Cornelius (Cornelius) joined a group of men who were working on Donald Johnson's (Johnson) car radio in Wes Montgomery Park in Indianapolis. Trotter and Jimmy Proctor (Proctor) had been at the park but left before Cornelius's arrival. Trotter and Proctor returned to the park approximately fifteen minutes after Cornelius arrived, and Trotter asked Cornelius if he wanted to make some money. At trial, Cornelius recounted that conversation as follows:

"Q [deputy prosecutor] And after they got to the park did you have any conversation with the Defendant, Gordon Trotter?

A Yes.

Q Tell the jury what was said to you and what you said to them?

A Well, you know, he said, Do you want to go make some money. And I said Yeah. And you know, he, you know, he said, well a house has been broke into.

Q Okay. Did he say who broke into the house?

A *Well, at that, you know, at that time uh I think he said he did, I'm not really for sure, I can't really say he did say it.*

Q Was anyone else a part of that conversation? Other than you and Mr. Trotter?

A No."

*Record* at 140 (emphasis supplied).

Trotter instructed Cornelius to follow him to the breached house in about five minutes. Cornelius and an unidentified man left the park and journeyed to a house located one-half block from the park. When they arrived, Trotter and Proctor were already standing outside the house with bags in their hands; although, Corne-

---

**1.** Ind.Code 35–43–2–1 (1982).

**2.** IC 35–43–4–2.

lius did not see what the bags contained. Cornelius testified the house was already broken into when he arrived:

"Q When you got to the white house that you took the guns out of, the door that you went into, was it open, closed, locked, or unlocked?

A It was open.

Q The door was open?

A Yes."

*Record* at 159. Cornelius and the unidentified man went inside and removed a number of guns from the house. The group then returned to Wes Montgomery Park with the guns and proceeded to dispose of the stolen goods.

Cornelius later turned himself in to police and negotiated a plea bargain in exchange for his testimony. At trial, Howard Armstrong (Armstrong), the owner of the burglarized bungalow, testified the house was secure in the morning when he left. He further indicated that entrance was obtained by kicking in a door with such force that the deadbolt lock shattered the door frame. Additional evidence revealed that a window on the side of the home was also broken. Trotter's jury trial ended with his convictions of burglary and theft.

In our previous opinion, we held that the evidence was insufficient to establish that Trotter or any of his cohorts committed the actual breaking into the dwelling. Because a "breaking" is an essential element of the crime of burglary, Trotter's conviction was overturned. *Blackmon v. State* (1983), Ind., 455 N.E.2d 586; IC 35–43–2–1. Upon reflection, I conclude we erroneously substituted our assessment of the facts for that of the jury.

It is classic appellate law that in deciding questions of sufficiency of the evidence, we may look only to the evidence most favorable to the State and to the reasonable inferences which may be drawn from that evidence. So long as the evidence and the reasonable inferences drawn therefrom establish each element of the crime charged beyond a reasonable doubt, the conviction will stand. In effecting our analysis, we are precluded from weighing conflicting evidence or judging the credibility of witnesses. *Loyd v. State* (1980), 272 Ind. 404, 398 N.E.2d 1260, *cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

The task of an appellate court with regard to the evidence adduced at trial is *different* from that of the trial judge or jury.

"It is the policy of the law, sometimes expressed in constitutional and statutory enactments, that questions of fact shall be determined solely by the jury under the supervision of the trial court, and it is not the function of the appellate court to determine guilt or innocence of accused, since this is exclusively for the jury given the necessary minimum evidence legally sufficient to sustain a conviction unaffected by error."

24A C.J.S. *Criminal Law* § 1880, at 762–63 (1962) (footnotes omitted). Thus, in a criminal case, the assessment of guilt beyond a reasonable doubt is a question of fact for the trial judge or jury, but the review of the trial level determination of guilt is a matter of law for the court on appeal. *See Wincel v. State* (1968), 251 Ind. 498, 242 N.E.2d 508; *Taflinger v. State* (1974), 162 Ind.App. 644, 320 N.E.2d 775. That is to say, the trier of fact must be convinced of a defendant's guilt beyond a reasonable doubt based upon the facts of the case. The reviewing court, however, need not be convinced of the defendant's guilt beyond a reasonable doubt. *Coach v. State* (1968), 250 Ind. 226, 235 N.E.2d 493. A reversal for insufficient evidence requires an appellate court to decide that, as a matter of law, no reasonable person could have found the defendant guilty on the basis of the evidence presented at trial. In 1956, Justice Emmert, writing for a unanimous Indiana Supreme Court, elaborated on this point:

"When we carefully examine the cases decided in the long history of this court which have reversed convictions because they were not sustained by sufficient evidence, it is apparent that the court was applying a test that some material allegation had not been proved by sub-

stantial evidence so that no reasonable man could say this issue had been proved beyond a reasonable doubt.

In the leading case of *State v. Gregory,* (1936), 339 Mo. 133, 143, 96 S.W.2d 47, 52, the court analyzed the rule on review to be as follows: *'Now since the test of substantial evidence is whether a jury reasonably could find the issue thereon,* the result must depend in some measure upon the degree of persuasion required. In a criminal case liberty and sometimes life are involved, and there cannot be a conviction except upon a finding of guilt beyond a reasonable doubt. *Necessarily, therefore, it becomes the duty of an appellate court as a matter of law to decide whether the evidence was sufficient to induce a belief of the defendant's guilt beyond a reasonable doubt in the minds of jurors of average reason and intelligence. And in resolving that question the court undoubtedly can pass on the credibility of the testimony to the extent of determining whether it was substantial in the sense above explained.* In no other way can the rights of the defendant be protected. It would be an incongruous situation if the court were compelled to let a conviction stand as being supported by evidence warranting a verdict of guilt beyond a reasonable doubt, when *for any reason* made manifest on the record the court is convinced the evidence reasonably could not support a conviction.' This standard is supported in many jurisdictions."

*Baker v. State* (1956), 236 Ind. 55, 62–63, 138 N.E.2d 641, 645 (citations omitted) (emphasis supplied in part) (footnote omitted).

It is this distinction between the function of trial and appellate courts which underpins the edict that an appellate court will not reweigh the evidence or judge the credibility of the witnesses when considering an allegation of insufficient evidence. The distinction is often mentioned:

"Nor do we on appeal weigh the evidence to determine whether or not, in our opinion as judges sitting on this Court, the proof is beyond a reasonable doubt.

Reasonable doubt is one for the trier of the facts—not the judges of a court of appeals. The triers of the fact see the witnesses, how they act and their reactions to questions in the courtroom. It has been said many times that because these factors cannot be brought into a court record, they become imponderable for the consideration of a court of appeals."

*Wincel, supra* 251 Ind. at 500, 242 N.E.2d at 509.

When the facts adduced at Trotter's trial are reviewed in light of the foregoing, I am not prepared to declare as a matter of law that no reasonable person could be persuaded beyond a reasonable doubt of Trotter's guilt. A conviction may be grounded solely upon circumstantial evidence, *Watkins v. State* (1984), Ind., 468 N.E.2d 1049, and the circumstantial evidence here gives rise to a reasonable inference that Trotter did, in fact, break into the Armstrong residence. Cornelius's statement that he thought Trotter might have admitted committing the breaking is equivocal ("I think he said he did, I'm not really for sure ...."), but Cornelius's credibility and the weight to accord his statement are questions for the trier of fact to assess. *Loyd, supra; Wincel, supra.*

Also, there is other evidence which supports a reasonable inference that Trotter committed the breaking. Trotter was at Wes Montgomery Park, but left the park only to return within fifteen minutes on foot to announce that he knew of a house that had been broken into. The house to which he directed Cornelius was one-half block from the park. The distance was such that the jury could infer Trotter had ample time to leave the park, break into the house, and return for assistance in burglarizing the premises. Moreover, when Cornelius arrived at the house, Trotter and Proctor were already there, standing outside the breached premises with sacks which may have contained stolen contraband. Trotter possessed the knowledge of which house was broken into and directed

Cornelius to follow him to that location in about five minutes. Clearly, there was a time urgency in Trotter's actions, and the trier of fact could infer that he already entered the home from the sack he possessed when Cornelius arrived.

Burglary is a surreptitious crime, one usually not susceptible to proof by direct evidence. Here, considering the evidence as a whole, the circumstances give rise to a reasonable inference that Trotter was the individual who broke into the Armstrong dwelling. While another trier of fact might conclude from this evidence that Trotter did not commit the breaking, the evidence supports a reasonable inference that he did. For this court to declare otherwise as a matter of law is to violate the exclusive province of the trier of fact to weigh the evidence. I would, therefore, grant the State's petition for rehearing, vacate that portion of the memorandum decision which reverses Trotter's burglary conviction, and affirm the judgment of the trial court in all respects. To do any less is to usurp the prerogative of the trier of fact.