## DUNN v. THE STATE

[No. 20,705. Filed June 8, 1906.]

1. EVIDENCE. — *Criminal Law.* — *Circumstantial.* — *Theory of.*— The purpose of circumstantial evidence is so strongly to establish the probability of a fact as to make the assumption of the

existence thereof safe; and the greater the number of harmonizing facts and the fewer the antagonizing facts, the safer is such assumption.  p. 697.

2.  TRIAL.—*Criminal Law.—Evidence.—Circumstantial.—Failure to Prove Details.—Question for Jury.*—The failure to prove subsidiary facts involved in an hypothesis of guilt does not necessarily require an acquittal of the accused, but such question ordinarily becomes one for the jury, subject to the revisory power of the trial judge.  p. 698.

3.  SAME. — *Instructions. — Criminal Law. — Evidence.—Circumstantial.—Burden of Proof.—Reasonable Doubt.*—It is not error to refuse to charge, in a criminal case depending upon circumstantial evidence, that the defendant must be acquitted unless the evidence establishes every necessary link in the chain of circumstantial evidence beyond a reasonable doubt.  p. 698.

4.  EVIDENCE.—*Circumstantial.—Force of.*—The force or convincing power of circumstantial evidence lies in the mental effect produced by the items thereof in combination, and not by the effect of the items considered separately.  p. 699.

5.  SAME. — *Circumstantial. — Theory. — Contradictory Facts.* — Where circumstantial evidence discloses some facts in harmony with the guilt of defendant and some in harmony with his innocence, guilt is not established by the process of exclusion; but the facts should be weighed on both theories and where an ultimate fact is found which is necessarily inconsistent with guilt, the defendant should be acquitted.  p. 699.

6.  SAME.—*Circumstantial.—Hypothesis.—Contradictory Facts.*—Facts, affirmatively and ultimately established, which are irreconcilable with the hypothesis of defendant's guilt, necessarily destroy such hypothesis.  p. 700.

7.  SAME. — *Circumstantial. — Weight.—How Determined.*—The jury in considering the weight of circumstantial evidence should examine all of the facts of the case, free from bias and prejudice, and apply such facts to the hypothesis of innocence, as well as of guilt, before finally determining such questions.  p. 700.

8.  TRIAL. — *Instructions. — Right to. — Criminal Law.*—The defendant in a criminal case has the right upon request to have pertinent instructions given to the jury, so that the jury shall be instructed on all legal questions necessary to enable them to reach a correct verdict.  p. 701.

9.  SAME.—*Criminal Law.—Instructions.—Refusal to Give.*—It is reversible error to refuse to instruct in a criminal case, depending upon circumstantial evidence, that if one necessary fact be proved which is irreconcilable with defendant's guilt,

he should be acquitted, though the jury was instructed that to justify a conviction the evidence must all be in harmony with defendant's guilt, the jury must be satisfied that all the circumstances proved are consistent with defendant's having committed the crime and the facts must be inconsistent with any other rational conclusion than that defendant is the guilty person.   p. 702.

10.   TRIAL. — *Instructions.* — *Witnesses.* — *Credibility.* — *Crimes.* —*Illicit Relations.*—Where a witness for the prosecution admits the commission of crimes and the continuance of protracted illicit relations, defendant is entitled to have the jury instructed that they may consider such admissions on the question of the credibility or impeachment of such witness's testimony.   p. 703.

From Allen Circuit Court; *John M. Smith,* Special Judge.

Prosecution by the State of Indiana against Charles W. Dunn.   From a judgment of conviction, he appeals.   *Reversed.*

*Henry Colerick* and *Breen & Morris,* for appellant.

*Charles W. Miller,* Attorney-General, *Samuel M. Hench, Ronald Dawson* and *Emmet V. Emrick,* for the State.

GILLETT, J.—Appellant seeks the reversal of a judgment convicting him of murder in the first degree.   This is the second appeal.   See *Dunn* v. *State* (1904), 162 Ind. 174. The error assigned calls in question the overruling of a motion for a new trial.   It was the theory of the State, stated in its boldest outlines, that appellant choked the deceased, a girl of ten, to death, in his barn, as the result of an effort to commit an outrage upon her person, and that he afterwards carried her body to his house, and threw it, through an opening in the kitchen floor, into a cistern. Both as to the *corpus delicti* proper and appellant's guilty agency in connection therewith, the State relied on circumstantial evidence.   Upon many points there was conflict in the testimony.

In the disposition of the appeal we shall, in the main, confine our attention to the action of the court in refusing to give two instructions, tendered by appellant, and num-

bered, respectively, thirteen and sixteen. Said instructions are as follows: "(13) In a case like this, where the evidence is all circumstantial, it is necessary, before there can be a conviction, that every necessary link in the chain of circumstances must be proved beyond all reasonable doubt, although some of the circumstances may be clearly proved beyond all reasonable doubt, yet if other necessary circumstances are not proved beyond all reasonable doubt, then you should acquit the defendant." "(16) If any one fact, necessary to a conclusion of guilt, is wholly inconsistent with the hypothesis of the guilt of the accused, it breaks the chain of circumstantial evidence upon which the inference of guilt of the accused depends, and, however plausible or apparently conclusive all other circumstances may be, the charge must fail and you should acquit the defendant."

The purpose of the introduction of circumstantial evidence is so strongly to establish the probability of the existence of a fact as to warrant the assumption of 1. its existence. It is evident, however, that, as a working tool, the most that can be expected of such evidence is the attainment of moral certainty. Where there is a distinct paucity of fact in the evidence, the result ordinarily is that nothing more than a conjecture or suspicion is generated, but as the introduction of the testimony involves, in a greater or less degree, the effort to reconstruct the case from the very elements which before composed it, it is evident that as the number of coincidences increase, both with respect to previous experience and with respect to each other, these primary facts may form a body or chain of facts, which, by reason of its completeness and the extent to which the facts sanction each other, is sufficient to eliminate every other reasonable hypothesis than that of guilt. "The slightest possible presumption, often repeated," says Butler, in the introduction to his Analogy, "will amount to a moral certainty."

It is, or should be, the effort of the prosecutor to prove all of the known surrounding facts, so that the body of the charge may as far as possible be articulated.

2. It will often be found, however, where the facts are numerous, that evidence is wanting of some fact necessary closely to connect the facts involved in the hypothesis, but questions of this kind can only be dealt with in the concrete. Whether the want of direct evidence upon a fact involved in the assumption ought to produce an acquittal, is a question which must in many cases address itself to the good sense of the jury, subject to the revisory power of the trial court, the result depending largely upon whether there is a real rather than a seeming break in the connection, thus leading to the possibility of innocence. It is vital in such a case to consider the extent, if at all, that the surrounding facts may be said to press on to the conclusion which the hypothesis of the State involves. In view of the manner in which facts may act upon each other, both by way of supplying omissions in the direct evidence and strengthening weak testimony, we are of

3. opinion that the court ought not to inform the jury that every necessary link in the chain of circumstantial evidence ought to be proved beyond a reasonable doubt. Our reason for this conclusion is that in the use of the word "link" the figure of speech becomes misleading, since the integrity of the chain depends upon the resisting power of the weakest link, unaided by any other. It is true that the absence of the smallest link in the chain of evidence may so break the connection as to create a fatal weakness in the State's case, depending upon its nature and the character of the other facts, but it is obvious that an instruction should not be given which would have a tendency to lead the jury to infer that each and every subsidiary fact must be proved beyond a reasonable doubt, or that a strain upon any one of them beyond the breaking point would necessarily destroy the whole fabric of the evidence. *Wade* v.

*State* (1880), 71 Ind. 535; *Hinshaw* v. *State* (1897), 147 Ind. 334; 1 Blashfield, Instructions to Juries, §§320, 321, and cases cited. There must in a substantial sense be a chain of facts, connecting the crime with the 4. criminal, which is sufficient to establish guilt to a moral certainty, but, apart from the preliminary process of comparison which the consideration of circumstantial evidence ought to involve, it is evident that ultimately the question whether the circumstances require that conclusion must depend upon their force when held in combination. Burrill, Circumstantial Ev. (2d ed.), 80, 150, 179. Subject to this explanation, we are prepared to reaffirm the declaration of this court, in *Sumner* v. *State* (1841), 5 Blackf. 579, that "the party upon whom the burden of proof rests, is bound to prove every single circumstance which is essential to the conclusion, in the same manner and to the same extent as if the whole issue had rested upon the proof of each individual and essential circumstance."

It has seemed to us not inappropriate, although we have been unable to sanction appellant's instruction thirteen as a correct exposition of the law, that we should consider the proposition therein involved, since the instruction afforded a basis for some statement as to the manner in which a hypothesis may be established; but in passing to appellant's instruction sixteen, it is evident that we have to deal with the obverse side of the question. As we have already pointed out, the manner of raising a presumption to a basis of such high probability as to justify a jury in acting upon it as a fact in a matter involving life or liberty, is a process. While the prosecutor may not be called on to account for every fact which the evidence discloses, and while he may in many cases rely upon the composite effect of his evidence in establishing his hypothesis, yet it is evident that where some fact necessary to a conclusion of guilt stands out in

contradiction to the facts which afford the basis for his general assumption, the matter necessarily resolves itself into a weighing of probabilities, and in such circumstances it cannot be said that the evidence shows, by exclusion, that the defendant is guilty. The facts in the case should be tested by the assumption of innocence as well as of guilt, and where the jury reaches the ultimate conclusion that a fact exists which is necessarily inconsistent with the latter assumption, the defendant must be given the benefit of the doubt.

In substance the language of the instruction in question is found in the opinion of Shaw, C. J., in the leading case of *Commonwealth* v. *Webster* (1850), 5 Cush. 295, 52 Am. Dec. 711, and this statement of the law was used by Mitchell, J., as an appropriate declaration of the legal principle, in *Cavender* v. *State* (1890), 126 Ind. 47. "It is essential," observes Starkie, "that all the facts should be consistent with the hypothesis. For as all things which have happened were necessarily congruous and consistent, it follows, that if any one established fact be wholly irreconcilable with the hypothesis, the latter cannot be true. Such incongruity and inconsistency is sufficient to negative the hypothesis, even though it coincide and agree with all the other facts and circumstances to the minutest extent." Starkie, Evidence, *859.

In Mr. Burrill's valuable work on circumstantial evidence, we find him continually cautioning against precipitancy in the mental process, not only that inconsistent facts may be observed, but that it may be perceived whether the evidence concerning them is true or can be reconciled. Burrill, Circumstantial Ev. (2d ed.), 33, 85, 153, 181, 192, 207. Under the third fundamental rule declared by him, that "the hypothesis of delinquency or guilt should flow naturally from the facts proved, and be consistent with them all," he states: "By this rule, the attainment of three important objects (all of

them indispensable conditions of accuracy in the conclusion proposed) is secured; namely, an examination of all the facts of the case; an examination of them, free from bias or prejudice; and an examination of the case on both its sides, or in its aspects of favor as well as disfavor to the accused. Its practical effect is to prevent precipitancy in the inferential process, and to combat what is often the tendency of the mind to jump at conclusions, when under the influence of impressions derived from a few prominent facts, without examining all the facts of the case, and allowing them every interpretation which they will reasonably admit. The process is to be a natural. one, without the use of any mental violence, in straining facts beyond their real significance, or adapting them, in any degree, to preconceived opinions. By requiring the hypothesis of guilt to be consistent with all the facts, the rule secures to the proposed conclusion an essential element of truth, while allowing all due weight to the supposition of possible error; and prominently recognizes the existence of that opposite side (*contrarium*), which is contemplated and embodied in the great fundamental maxim of presumption from facts." Burrill, Circumstantial Ev. (2d ed.), 735.

It is contended by counsel for the State that the instruction in question was covered by certain general instructions, in which it was declared, among other things, that to justify a conviction upon circumstantial evidence the circumstances "must all be in harmony with the guilt of the accused," that in such a case the jury must "be satisfied that all the circumstances proved are consistent with the defendant's having committed the act," and "must also be satisfied that the facts are such as to be inconsistent with any other rational conclusion than that the defendant is the guilty person." It is the right of a party charged with crime to insist, if he tenders proper instructions, that the court shall instruct the jury on all legal questions neces-

sary to enable it to reach a correct verdict. . *Parker* v. *State* (1894), 136 Ind. 284. There is a right to have given an instruction which contains a specific application of a rule of law to the evidence. *Fahneslock* v. *State* (1864), 23 Ind. 231; *Carpenter* v. *State* (1873), 43 Ind. 371; *Hipes* v. *State* (1880), 73 Ind. 39; *Woolery* v. *Louisville, etc., R. Co.* (1886), 107 Ind. 381, 57 Am. Rep. 114; *McCormick* v. *Smith* (1891), 127 Ind. 230. In *Fleming* v. *State* (1894), 136 Ind. 149, where the defendant relied on evidence of an *alibi*, it was held that it was error to refuse to instruct that a reasonable doubt might arise from a consideration of the *alibi* evidence, although the court had given a general instruction upon the subject of reasonable doubt.

The instructions given by the court in this case failed to bring out an undoubted legal proposition into the bold relief that it was entitled to, and they were not so well calculated, as the instruction tendered, to lead the jury to understand that the inferential process is largely one of comparison. Indeed, it is clear that under the instructions given the jury would be more likely than they would otherwise have been to reject a possible important fact as inconsistent, rather than abandon an hypothesis that in other respects might have seemed to its members to be well maintained.

We do not think that in a case of this nature, involving life and liberty, we mistake our duty in holding, since a proper instruction was tendered, that appellant was entitled to a specific statement of the well-known doctrine concerning what Bentham terms the "disprobabilizing fact." 3 Bentham, Rationale of Judicial Ev., 13. Because of the failure to give said instruction the cause must be reversed.

We may state, in passing, that we are impressed with the view that appellant was entitled, in the circumstances of

this case, had he asked it, to an instruction as to 10. the duty of the jury to consider the admissions of a witness, in testifying, that such witness had committed crimes or had sustained protracted illicit relations, for the purpose of determining whether the credibility of the witness was thereby impeached or the testimony of such person impaired. It is our opinion, however, that the instructions tendered on that subject were properly refused, since they were too much calculated to lead the jury to infer that in the court's view the witness ought not to be believed.

Judgment reversed, and a new trial ordered.