ROBINSON *v.* STATE OF INDIANA.

[No. 30,120. Filed July 5, 1962.]

*Orr & Bridwell,* of Indianapolis, for appellant.

*Edwin K. Steers,* Attorney General, and *Carl E. VanDorn,* Deputy Attorney General, for appellee.

LANDIS, J.—Appellant here was indicted for murder in the first degree. After a trial by jury he was con-

victed of murder in the second degree. He was sentenced to life imprisonment.

Error is assigned on the overruling of his motion for new trial on the grounds that the verdict was not sustained by sufficient evidence and was contrary to law.

To consider the question of the sufficiency of the evidence to sustain the verdict it is necessary that we consider the evidence most favorable to appellee, which was as follows.

Decedent and Peggy Ann Dyer were married in 1957 and separated in about September of 1958, at which time deceased moved to his grandmother's home. Decedent and his wife remained on friendly terms and decedent visited his small son once a week.

Peggy Ann Dyer testified she had known appellant prior to her marriage and that she started to date appellant two or three months after the separation. During this time appellant stayed for two weeks at the premises at 2402 Guilford, Indianapolis, where Peggy Ann Dyer was living with her parents, with appellant sleeping on the living room couch. Peggy Ann Dyer acknowledged that at various times she had sexual relations with appellant at a hotel.

Appellant who had been married to one Odessa Robinson since 1950 testified he first dated Peggy Ann Dyer in 1952 and that he had since that date continued to meet secretly with her. Appellant stated that after the separation he was first invited to stay at the home by Mrs. Stratten, Peggy's mother, and that he thereupon occupied Peggy Ann's bedroom with Peggy Ann and started living with her as husband and wife until December 26, 1959, the date of the homicide.

On Christmas Day 1959, appellant, Peggy Ann Dyer and her family were together at 2402 Guilford and in the afternoon deceased came to the house to bring a Christmas present for his small son. All remained until 2:30 or 3:00 a.m. December 26, when appellant, deceased, Peggy Dyer, Paul Reeves and his girl friend went to a party at Biggerstaff's home in Indianapolis. After staying a short while, appellant drove Peggy Dyer home during which trip Peggy states she told appellant that she and her husband were planning to go back together the first of the year.

After being thus notified his relationship with Mrs. Dyer was about to end, appellant started to beat Mrs. Dyer with an iron pipe, and as the automobile approached her home she jumped from the car. When appellant followed, Mrs. Dyer stated she screamed and her father and deceased came to her rescue. As a result of the beating administered by appellant Mrs. Dyer lost three teeth and was cut about the head and was taken to the hospital. She returned from the hospital with her deceased husband at 10:00 a.m. on December 26, 1959.

According to appellant's testimony he entered the house soon after Mrs. Dyer left his auto on December 26. He was awakened when the Dyers returned from the hospital and he heard some conversations downstairs, at which time he moved into the attic room where he fell asleep.

After returning from the hospital deceased and Mrs. Dyer went upstairs to rest. In the bedroom there were two doors, one to the attic and one to the hall. Soon after Mrs. Dyer went upstairs to rest, two police officers came to the house at 2402 Guilford to talk to her concerning the attack made upon her.

After talking with the officers Mrs. Dyer returned to her bedroom and noticed her husband was still asleep but that the attic door was slightly ajar. When she attempted to close the door, the appellant jumped out with an ice pick in his hand. According to Peggy Dyer appellant then stabbed her in the right shoulder and back. She then ran down the stairs.

Mrs. Stratten, Peggy's mother, testified she heard Peggy scream, "Jerry is up here," and stated she went upstairs immediately and saw appellant on his knees on the west twin bed stabbing the deceased five or six times with an ice pick. She testified deceased was sitting upright in a dazed condition when she observed appellant stab him. She observed no weapon in the hand of deceased during this attack by appellant.

Paul Reeves, Peggy's brother, was awakened by Mrs. Stratten's screams as she ran up the stairs. He then went upstairs in time to observe appellant leave the bedroom and run into the bathroom. Paul Reeves stated he followed appellant into the bathroom where appellant stabbed him with an ice pick in the face and arm. Mrs. Stratten observed this attack and told appellant to stop which he did.

Mrs. Stratten also stated that when she reached the upstairs of her home after hearing Peggy scream, "Jerry is up here," no one but the deceased and appellant were upstairs.

When Paul Reeves came out of the bathroom he noticed deceased crawling out of the bedroom into the hallway. Mr. Stratten, Peggy's father, also saw deceased crawling from the bedroom, and went to his assistance and deceased died in his arms.

Appellant left the house shortly after the stabbing and was observed still to have the ice pick in his hand. He was interrogated by Sgt. Higgins of the In-

dianapolis police on the afternoon of the homicide, and according to Sgt. Higgins, stated:

". . . Peggy had come upstairs and that he heard her talking and came out of the attic door with the ice pick and started attacking her. He said she screamed and he stabbed her and that he saw somebody on the bed and got in a fight with him and stabbed him; then he said he ran into Paul Reeves and stabbed him and at that time he ran out of the house."

Appellant further stated to Sgt. Higgins that he, appellant, took the ice pick into the house.

Appellant cites the rule that where there is a reasonable doubt as to the sufficiency of the evidence on any material question, the defendant should be acquitted, and argues that there was a reasonable doubt in this case as to malice, and further, that malice may not be inferred from the use of a deadly weapon in self defense or in sudden heat occasioned by adequate provocation.

The rule requiring proof of a criminal case beyond a reasonable doubt is the rule at the trial court level for the guidance of trial courts and juries. It is well settled that it is not necessary on appeal for the evidence to show the defendant's guilt beyond a reasonable doubt in order for the judgment of conviction to be sustained. *Whitney* v. *State* (1934), 206 Ind. 562, 570, 188 N. E. 779, 782.

This Court has upon it a duty to consider, not to weigh, the evidence in the case for the purpose of determining whether there is any substantial evidence of probative value from which a jury reasonably could have inferred that the appellant was guilty of the offense charged. *Christen* v. *State* (1950), 228 Ind. 30, 37, 89 N. E. 2d 445, 447.

As to appellant's contention that malice may not be inferred from the use of a deadly weapon as the same was used in self defense, we believe it pertinent to quote from our opinion in *Swift* v. *State* (1961), 242 Ind. 87, 90, 176 N. E. 2d 117, 119, where a similar contention was made. In that case we stated:

"In the case before us appellant does not deny that he inflicted the mortal wound on deceased with a pocket knife, but he contends he was acting in defense of his own person. However, it is the province of the jury to determine the credibility of witnesses and determine whether they will believe all, none, or any part of a witness's testimony, *and the determination of whether a homicidal act is carried out in self-defense is an ultimate fact to be decided by the jury. . . .*" (Our italics.)

In the case before us a considerable amount of the evidence was entirely incompatible with appellant's contention of self-defense and the jury was under no compulsion to believe appellant's own testimony, some of which conflicted with that of other witnesses. As stated above it was the jury's province to believe all, none, or any part of a witness's testimony, and this applies likewise to the testimony of appellant. The question of self-defense was for the determination of the jury and upon such evidence as here presented we cannot disturb the jury's verdict. The case is entirely distinguishable from *State* v. *Sullivan* (1960), 240 Ind. 274, 163 N. E. 2d 745, where the evidence unquestionably showed the deceased himself injected the knife into the altercation with his wife which resulted in his death. In the case at bar there was evidence appellant took the ice pick into the house where the killing occurred some hours later, and that the decedent was merely sitting up in bed in a

dazed condition, while he was being attacked by appellant.

With reference to appellant's contention there was no malice as the deadly weapon was used in sudden heat occasioned by adequate provocation, we quote from our recent opinion in *Yarber* v. *State* (1962), 242 Ind. 616, 618, 179 N. E. 2d 882, 883, viz:

> "Appellant attempted to show provocation by claiming decedent was angered by losses in a dice game immediately before the homicide and that he attacked appellant. Appellant's claim was discredited by the physical facts, viz.: There were no dice at the scene, nor on the person of appellant, nor was the money claimed to have been won by appellant found on his person, although he was fully dressed when apprehended almost immediately following the incident. It is well settled that the sudden heat of passion sufficient to reduce a homicide from murder to manslaughter must be accompanied by adequate provocation. *Henning* v. *The State* (1886), 106 Ind. 386, 400, 6 N. E. 803, 812, 7 N. E. 4."

Similarly in the case before us there was evidence to controvert appellant's claim of sudden heat of passion. The taking of the ice pick into the house some hours before Peggy Dyer and the others returned from the hospital and his lying in wait and hiding in the attic until they returned, are not compatible with a theory of sudden heat of passion.

The contentions of self-defense and sudden heat raised by appellant in this case were proper matters for the jury's consideration, and there is an abundance of evidence to support the conclusion which they reached contrary to his contentions as to these matters.

Appellant has further contended that the evidence is insufficient as appellant was the only surviving

witness to the immediate altercation resulting in decedent's death. Appellant has overlooked the testimony of Mrs. Stratten, mother of Peggy Dyer, who testified she went upstairs immediately on hearing her daughter's screams and saw appellant stab deceased five or six times with an ice pick when deceased was sitting upright and in a dazed condition, and that she saw no weapon in deceased's hand during this attack by appellant. This evidence in addition to contradicting appellant's plea of self defense, strongly supports the conclusion the jury must have reached as to the existence of malice.

The verdict is sustained by sufficient evidence and is not contrary to law.

Judgment affirmed.

Arterburn, C. J., and Jackson, Bobbitt and Achor, JJ., concur.

Note.—Reported in 184 N. E. 2d 16.