MARY WOODS *v.* STATE OF INDIANA.

[No. 2-673A149. Filed December 27, 1973. Rehearing denied February 12, 1974. Transfer denied April 30, 1974.]

*Kent O. Stewart*, of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Assistant Attorney General, for appellee.

SULLIVAN, J.—Mary Woods was convicted of voluntary manslaughter in connection with the death of her husband, Willie Woods. She argues upon appeal that the verdict and judgment are not supported by sufficient evidence in that the State did not rebut or disprove her claim of self-defense. She also alleges that the court abused its discretion in failing to permit certain of the court's written instructions to be taken by the jury for use during their deliberations.

We affirm.

Mary and Willie T. Woods were married on September 23, 1971. During the ensuing year, Willie and Mary apparently argued frequently. Witnesses testified that, "fifteen or twenty times" or "almost every week-end", Willie and Mary had "played with knives" threatening each other and laughing. On such occasions, Mary had at times taken Willie's knife away from him. Mary weighed 200 pounds and Willie weighed 175. On these numerous prior occasions, the witnesses had considered such conduct to be a joke.

On October 7, 1972, Mary and Willie were playing cards at the home of Mary's brother, one Finis Legg. During the course of the afternoon, Mary asked Willie for $1.00, which he refused to give her. She then proceeded to remove $5.00 from her brassiere, where she had secreted $55.00 unknown to Willie.

Upon seeing the money, apparently Willie became enraged and during the ensuing argument, Finis Legg ordered Willie and Mary from his house. On arriving at their car, they discovered that it would not start; while Finis prepared to "jump" the battery, the argument continued within the car and Willie pulled out his knife and threatened Mary. Both of them got out of the car and Willie came around the car still holding the knife, and made another threat to the effect that he would "slit her throat". The eye witnesses are

all in agreement that the spectators to the argument were laughing, apparently viewing the spectacle as another "joke". Although Mary denied it on the stand, her brother and the other eye witnesses stated that both Mary and Willie were laughing at this time.

The exact chronology of the following events is not clear from the witnesses' testimony. Willie folded his knife and put it in his pocket, turned from Mary and walked away, with Mary following. Either just before or just after Willie turned and walked away, Mary withdrew a knife from her brassiere and struck Willie with a downward thrust which entered the base of his neck on the right side above the clavicle. Mary contends she struck him while he was facing her and in her opinion, threatening her life. None of the witnesses saw her draw the knife or strike the actual blow. The witnesses did testify that they did not see her with a knife until after Willie had turned and walked away unarmed. One witness testified that they were still laughing after Willie turned and walked away. While Mary was chasing Willie, after he had put his knife away and turned around, she was heard to say "that nobody was going to do over her and he wasn't going to do over her."

Willie walked up to Finis and asked to be driven to the hospital, because he was dying. Finis assumed that he was joking and proceeded to work on the car until he noticed that Willie was bleeding heavily from the neck wound. By the time Finis could get the car started, Willie had fallen beside the car and was dead.

Mary was charged with second degree murder and tried before a jury on January 29, 1973. An extensive instruction regarding self-defense was given to the jury before they retired for their deliberation. Out of the jury's hearing, defense counsel moved that the jurors be allowed to take certain instructions with them during their deliberation. This motion was overruled. The jury returned and requested that the court re-read instructions concerning manslaughter. In-

stead, the court properly re-read all of the preliminary and final instructions.

## EVIDENCE WAS SUFFICIENT TO SUPPORT CONVICTION AS AGAINST CLAIM OF SELF-DEFENSE

Our Supreme Court in *King* v. *State* (1968), 249 Ind. 699, 705, 234 N.E.2d 465 formulated guidelines to be followed in considering the sufficiency of evidence to rebut a claim of self-defense:

"Where one has taken the life of another human being, and thereafter contends that he did so in self-defense, he can only be successful in his contention if:

(1) he acted without fault,
(2) he was in a place where he had a right to be, and
(3) he was in real danger of death or great bodily harm, or in such apparent danger as caused him in good faith to fear death or great bodily harm.

*Bullard* v. *State* (1964), 245 Ind. [1]90, 195 N.E.2d 856; *Hightire* v. *State* (1966), 247 Ind. 164, 213 N.E.2d 707. The burden is upon the State to show that defendant does not meet one or more of these requirements. *Dorak* v. *State* (1915), 183 Ind. 622, 109 N.E. 771. Whether the State has borne its burden of showing that the homicidal act was not carried out in self-defense is a question of ultimate fact to be decided by the jury. *Robinson* v. *State* (1962), 243 Ind. 192, 184 N.E.2d 16.

After the jury has made this determination in favor of the State and against the defendant, this Court, on appeal: '. . . has upon it a duty to consider, not to weigh, the evidence in the case for the purpose of determining whether there is any substantial evidence of probative value from which a jury reasonably could have inferred that the appellant was guilty of the offense charged' *Robinson* v. *State, supra*, 243 Ind. at 197. See also *Easton* v. *State* (1967), 248 Ind. 338, 228 N.E.2d 6; *Baker* v. *State* (1956), 236 Ind. 55, 138 N.E.2d 641."

In the instant case, witnesses testified that when Willie turned around and Mary began pursuing him, they were still laughing. At this time Willie's knife was folded and put away

in his pocket, where it was later found by the coroner. No witness had yet seen Mary with a knife. While chasing Willie, Mary uttered an apparent threat. It is illogical under Mary's version of the event to believe that, after striking out at Willie in defense of her life, she subsequently began stalking her mortally wounded husband and (after stabbing him), threatening him. It is our opinion that the evidence and reasonable inferences drawn therefrom support the conclusion that Willie was stabbed after he had put away his weapon and was no longer "threatening" his wife.

Even if we were compelled by the evidence to conclude that Willie was stabbed while he was still facing his wife, we may not upset the jury's determination. Witnesses testified that Mary and Willie had "played with knives" on many previous occasions. Mary admitted that she had previously taken a knife away from Willie, and she further testified that he had never cut her. It was uncontradicted that the spectators to the incident believed Willie was joking, and eye witnesses testified that Willie and Mary were laughing as well. Under this evidence, the jury was justified in finding that there was no real or apparent danger of bodily harm to Mary. While this court, looking at the bare record, might come to a different conclusion, we cannot reverse the finding of the trier of facts where, as here, there was substantial evidence of probative value indicating that, under the circumstances existing at the time, Mary Woods did not in fact believe herself endangered.

Mary's counsel on appeal argues that the fact that Mary did stab Willie is persuasive evidence that she did not consider his "threats" to be a joke. While this contention has superficial appeal, on close analysis one sees that acceptance of this "bootstrap" argument would allow defendant to use her act as its own justification. The only logical course is to require that an otherwise criminal act be justified by evidence external to the act itself. We thus conclude that the verdict and judgment were proper. *Marine* v. *State* (1973),

158 Ind. App. 72, 301 N.E.2d 778; *Clardy* v. *State* (1973), 156 Ind. App. 121, 294 N.E.2d 807.

## THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY NOT ALLOWING THE SELF-DEFENSE INSTRUCTION TO BE TAKEN INTO THE JURY ROOM

Mary Woods argues as error the refusal of the trial court to send the written instruction concerning self-defense with the jury during their deliberation.

Our Supreme Court recently decided a case strikingly similar to the case at bar. The instruction involved in *Martin* v. *State* (1973), 260 Ind. 490, 296 N.E.2d 793 was almost identical to the self-defense instruction herein. In ruling on the contention there, the court stated:

> "Appellant makes a persuasive argument as to why jurors should be permitted to take instructions to the jury room. He readily admits the well established law in Indiana to the contrary: that is, that the jury should be orally instructed, and that during its deliberations may request the court to re-read the instructions. The question is purely a matter of procedure with persuasive arguments on both sides of the question. If the law in Indiana is to be changed in this respect, it should be done either by legislative enactment or by rule of this Court. It is certainly not the type of question of such vital import that a case otherwise properly tried should be reversed for the sole purpose of sending written instructions to the jury room. The trial court followed the existing law on the subject and in doing so committed no error." *Martin* v. *State, supra,* 296 N.E.2d at 797.

Mary Woods attempts to differentiate her situation by pointing out that the jury herein was confused, as is allegedly evidenced by their requesting that a certain instruction be re-read. However, the requested instruction dealt only with manslaughter, not self-defense, thus clearly implying that the jury felt no need to re-hear the self-defense instruction. Nonetheless, the trial court answered the jury's request as was proper by re-reading all instructions.

The circumstances of this case are not such as would incline

an intermediate appellate court to question a doctrine so recently stated by the Supreme Court. We are therefore bound by the rule enunciated in *Martin* v. *State, supra.*

The judgment of the trial court is affirmed.

Buchanan, P.J. and White, J., concur.

NOTE.—Reported at 304 N.E.2d 817.