HENRY CLAY JENNINGS *v*. STATE OF INDIANA.

[No. 1273S262. Filed November 7, 1974. Rehearing denied January 3, 1975.]

*Davis, Davis & Layson,* of Corydon, for appellant.

*Theodore L. Sendak,* Attorney General, *Henry O. Sitler,* Deputy Attorney General, for appellee.

HUNTER, J.—Henry Clay Jennings appeals from his conviction of murder in the second degree. He was originally charged with first degree murder in the death of French Lick Chief of Police Verne Erwin. Trial by jury resulted in a verdict of guilty upon the lesser included offense. Jennings was sentenced to life imprisonment. He timely filed his motion to correct errors which was overruled. This appeal follows.

Appellant raises several issues for consideration in this appeal, foremost of which is appellant's claim of self-defense. A claim of self-defense is predicated upon the right of every citizen to reasonably defend himself against unwarranted attack. *Johnson* v. *State* (1971), 256 Ind. 579, 271 N.E.2d 123. The legal effect of a meritoriously

asserted claim of self-defense is the justification of an otherwise criminal act. The elements of self-defense, proof of which is incumbent upon one seeking to avoid criminal culpability, have previously been set forth by this Court in *King* v. *State* (1968), 249 Ind. 699, 234 N.E.2d 465. According to *King*:

> "Where one has taken the life of another human being, and thereafter contends that he did so in self-defense, he can only be successful in his contention if:
>
> "(1) he acted without fault,
> "(2) he was in a place where he had a right to be, and
> "(3) he was in real danger of death or great bodily harm, or in such apparent danger as caused him in good faith to fear death or great bodily harm."

When a defendant has successfully raised the issue of self-defense, the state may either rebut it directly, *Johnson* v. *State, supra,* or rely upon the sufficiency of its evidence in chief. *Nelson* v. *State* (1972), 259 Ind. 339, 287 N.E.2d 336. Whether the State has borne its burden of demonstrating that the homicidal act was not carried out in self-defense is a question of fact to be decided by the jury. *King* v. *State, supra; Robinson* v. *State* (1962), 243 Ind. 192, 184 N.E.2d 16.

On appeal, after the jury has made its determination in favor of the state and against the defendant, we are not free to reweigh the evidence. Rather, we must ascertain whether there exists any substantial evidence of probative value from which the jury could have inferred appellant's guilt beyond a reasonable doubt. If such evidence exists, we must affirm. *King* v. *State, supra; Robinson* v. *State, supra.*

The facts, when viewed most favorable to the state, indicate substantial evidence of probative value in support of the jury's finding. The defendant spent Saturday afternoon and evening drinking with some friends. After driving around during the early morning hours searching for his niece and

sister, defendant ultimately stopped in front of the French Lick police station, which was closed. Partially drunk and disturbed by the conduct of his sister and niece, defendant proceeded to fire a few shotgun blasts into the air. When Officer Beatty of the West Baden police department arrived upon the scene, the defendant testified that his shotgun "accidentally" discharged damaging the hood, windshield and roof on the right side of Officer Beatty's vehicle. Officer Flick, also of the West Baden police department, arrived upon the scene and radioed for assistance. Beatty and Flick began to talk to defendant in an attempt to get him to surrender peacefully. When Chief Erwin arrived he got out of his vehicle and told the defendant to put his gun down. When he gave this command, he did not have his gun drawn. The defendant took a step back and told the sheriff not to come any closer. The Chief repeated his order, started walking toward the defendant, drew his gun and fired. Simultaneously, defendant discharged his shotgun, killing Chief Erwin. Defendant fled, exchanging shots with the other officers as he did so. Defendant then turned himself in.

Appellant's claim of self-defense rests upon the testimony of others as to the reputation of decedent, testimony of previous unhappy relations between appellant and the decedent, and threats allegedly made upon defendant's life by decedent and known to the defendant. This evidence, had it been given credence by the jury, might have been sufficient to satisfy the third element of self-defense set out above. Thus, defendant might have been "in such apparent danger as caused him in good faith to fear death or great bodily harm." However, a review of the evidence indicates that defendant failed to establish the other requisite elements of self-defense. The jury concluded that defendant failed to prove that he was without fault. The jury's conclusion is adequately supported by the following facts:

    (1) Defendant failed to put his gun down and surrender peaceably when ordered to do so by an officer not then holding a gun on him; and

(2) Defendant's warning to the Chief not to come any closer.

Moreover, while defendant was originally in a place where he had a right to be (i.e., a public street), the jury could find that his subsequent criminal actions curtailed that right. Hence, there was no error in the jury's rejection of defendant's plea of self-defense.

Defendant was convicted of second degree murder as defined by IC 1971, 35-1-54-1, Ind. Ann. Stat. § 10-3404 (Burns Supp. 1974), which provides:

> "Whoever, purposely and maliciously, but without premeditation, kills any human being, is guilty of murder in the second degree, and, on conviction, shall be imprisoned to the state prison during life, or shall be imprisoned in the state prison not less than fifteen [15] nor more than twenty-five [25] years."

The burden was upon the state to prove beyond a reasonable doubt that:

(1) Appellant killed the decedent;
(2) The killing was done purposely and maliciously.

There is no question that appellant killed the decedent. Having determined that defendant's contention of self-defense was properly rejected by the jury, there is no question that the jury could infer malice from defendant's use of his shotgun. *King* v. *State, supra*. Likewise, purpose could also be inferred from the facts before the jury. There was sufficient evidence of probative value to support the conclusion of the jury that appellant's act was malicious and purposeful.

Appellant objected at trial to the showing of two color slides depicting decedent's wounds. The only objection made at trial and properly supported with authority on appeal pursuant to our Appellate Rule 8.3(A)(7) is that the state failed to prove that the exhibit depicted the victim "in a natural state immediately after death." Appellant's authority for this

proposition, *Warrenburg* v. *State* (1973), 260 Ind. 572, 298 N.E.2d 434, involved a photograph taken during an autopsy, showing in gross detail the incisions requisite to the autopsy as well as the original wounds inflicted upon the decedent. We held that so much of the photograph as focused upon the pathologist's incisions was irrelevant to the issue of death and should, therefore, have been excluded as "not depict[ing] the victim in her natural state immediately after death." Nevertheless, since other sufficient evidence was found, the error was held to be harmless. The slides in this case show no autopsy incisions and show only the decedent's wounds. Hence, they were relevant to establishing the cause of decedent's death and were properly received in evidence.

Appellant objects to the admission into evidence of certain statements which he made to police officers while being transported from the scene of the shooting to the Paoli jail, the statements being made before the defendant had been given his *Miranda warnings*. Appellant relies upon language in *Hewitt* v. *State* (1973), 261 Ind. 71, 300 N.E.2d 94, to the effect that officers in that case, when defendant began to discuss any involvement in the murder, stopped the suspect and gave him the proper warnings. In *Hewitt,* there were no eyewitnesses to the murder. Hence, the statements which *Hewitt* began to make in the presence of the investigating officers reached the central meaning of the Fifth Amendment right against self-incrimination, and under *Miranda* it was essential that the warnings be given promptly before *Hewitt* continued to speak. In this case, both of the officers testified that neither of them asked any questions of defendant while transporting him to jail. Additionally, one of the officers testified that defendant "ran off at the mouth all the way to Paoli." In *Miranda* v. *Arizona* (1966), 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, the United States Supreme Court clearly stated that "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." 384 U.S. at 478. Since

appellant's statements were not in response to interrogation and were freely, voluntarily and spontaneously given, there was no error in their admission. *New* v. *State* (1970), 254 Ind. 307, 259 N.E.2d 696.

For all the foregoing reasons the judgment of the trial court is affirmed.

Judgment affirmed.

Arterburn, C.J., DeBruler, Givan and Prentice, JJ., concur.

NOTE.—Reported at 318 N.E.2d 358.