JAMES E. WOODS *v.* STATE OF INDIANA.

[No. 2-1173A250. Filed December 9, 1974. Rehearing denied January 15, 1975. Transfer denied April 19, 1976.]

*Frank E. Spencer,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *John H. Meyers,* Deputy Attorney General, for appellee.

SULLIVAN, P.J.—Woods pleaded not guilty to a charge of first degree murder. Following trial by jury he was convicted of voluntary manslaughter and on July 27, 1972 was sentenced to a term of imprisonment for not less than two nor more than twenty-one years. This belated appeal followed, pursuant to Indiana Rules of Procedure, P.C. 2.

Woods presents three questions for our determination:

(1) Whether there was sufficient evidence to support the verdict and judgment in light of Woods' evidence concerning self-defense.
(2) Whether the court erred in refusing three instructions tendered by Woods concerning self-defense.
(3) Whether the court erred prejudicially in requiring a defense witness to name the father of her child.

I

## VOLUNTARY MANSLAUGHTER CONVICTION NOT ERRONEOUS DESPITE EVIDENCE OF SELF-DEFENSE

Woods contends that his conviction is contrary to law in that he acted in self-defense when he shot and killed Rudolph Coleman. The facts reveal that Woods was acquainted with Debra Caine and had argued with her on more than one occasion prior to Christmas night 1971. On that night, Woods, Susan Schuller and Edward Thomas, all of whom shared the same residence, returned home after delivering Christmas presents. Debra Caine had made numerous telephone calls to Woods' residence on the 25th. Woods himself had two conversations with her that night, thereafter becoming quite agitated. It was elicited from Susan Schuller and Edward

Thomas that after the telephone altercations with Debra and his indication of extreme displeasure with her, Woods threatened to "kick her [Debra's] butt". Fred Pruitt who was also present, stated that Woods said that he was "going to get her". Thereupon, and after arming himself with a sawed-off shotgun, Woods, accompanied by Susan Schuller, drove to Debra's residence. During this time, Pruitt telephoned Debra Caine and warned her of Woods' ensuing arrival and that he had a gun.

After knocking on the door, Woods was met by the deceased, Rudolph Coleman, who was then living with Debra. While Woods, from the patio-like porch, carried on an argumentative conversation with Debra who was inside the house, Coleman, standing in the doorway, held a machete so that it was not observed by Woods. Woods had secreted the sawed-off shotgun beneath his jacket by a shoulder sling with the barrel protruding into the back of his trousers. Debra testified that Woods' hands were behind him during the conversation. She stated that after Woods admonished her not to make further telephone calls, she heard a click [thereafter equated with the clicking sound made during an in-court demonstration of the shotgun] and that she saw Coleman step forward toward Woods. When Debra heard the click, she turned and ran seeking protection behind a couch from where she heard but did not witness Woods fire the fatal shotgun blast into Coleman's face.

Woods suffered a severe head wound inflicted by Coleman and following the shooting, Susan Schuller drove Woods to the hospital for treatment. The trip was interrupted at the request of Woods so that he could throw the shotgun from a bridge at College Avenue and Fall Creek in Indianapolis, from which location it was recovered by police.

Woods' entire argument with respect to sufficiency of the evidence is founded upon the proposition that he was merely conversing with Debra Caine when, for no reason, he was savagely attacked by Coleman. It is his contention that after

being struck and knocked to the ground, he shot and killed Coleman in self-defense.

Woods relies upon *Banks* v. *State* (1971), 257 Ind. 530, 276 N.E.2d 155 in which a voluntary manslaughter conviction was reversed. In that case, as in subsequent decisions of this court, (*e.g., Woods* v. *State* (1973), 159 Ind. App. 92, 304 N.E.2d 817) the factors to be considered in determining the sufficiency of evidence to rebut a claim of self-defense are set forth as drawn from *King* v. *State* (1968), 249 Ind. 699, 705, 234 N.E.2d 465:

> "Where one has taken the life of another human being, and thereafter contends that he did so in self-defense, he can only be successful in his contention if:
> (1) he acted without fault,
> (2) he was in a place where he had a right to be, and
> (3) he was in real danger of death or great bodily harm, or in such apparent danger as caused him in good faith to fear death or great bodily harm.
>
> *Bullard* v. *State* (1964), 245 Ind. 190, 195 N.E.2d 856; *Hightire* v. *State* (1966), 247 Ind. 164, 213 N.E.2d 707. The burden is upon the State to show that defendant does not meet one or more of these requirements. *Dorak* v. *State* (1915), 183 Ind. 622, 109 N.E. 771. Whether the State has borne its burden of showing that the homicidal act was not carried out in self-defense is a question of ultimate fact to be decided by the jury. *Robinson* v. *State* (1962), 243 Ind. 192, 184 N.E.2d 16. After the jury has made this determination in favor of the State and against the defendant, this Court, on appeal:
>
> > '. . . has upon it a duty to consider, not to weigh, the evidence in the case for the purpose of determining whether there is any substantial evidence of probative value from which a jury reasonably could have inferred that the appellant was guilty of the offense charged'.
>
> *Robinson* v. *State, supra,* 243 Ind. at 197. See also *Easton* v. *State* (1967), 248 Ind. 338, 228 N.E.2d 6; *Baker* v. *State* (1956), 236 Ind. 55, 138 N.E.2d 641."

The reversal in *Banks, supra,* hinged upon a determination that the defendant was at a place where he had a right to be, and that there was no evidence to support a finding or a

reasonable inference that the defendant provoked or instigated the fight or voluntarily took part in it.

Woods understandably emphasizes that portion of the evidence in this case which disclosed that the decedent was armed with a machete and that Woods suffered a severe cut on the head from a blow struck by the decedent. He argues that from such evidence the conclusion is inescapable that he killed Coleman in self-defense. While we would agree that the jury might have so found, such conclusion was not mandated as a matter of law. Our case thus differs from *Banks* v. *State, supra.*

· The jury here no doubt considered the events which led up to Woods' confrontation with Coleman and particularly the fact that Woods armed himself with a sawed-off shotgun in preparation for the anticipated meeting with Debra Caine. These factors when viewed within the framework of all the evidence and in light of the applicable law lead us to hold that the jury was warranted in finding that Woods did not kill in self-defense. The verdict was therefore not inappropriate. *Jennings* v. *State* (1974), 262 Ind. 476, 318 N.E.2d 358; *Dickens* v. *State* (1973), 260 Ind. 284, 295 N.E.2d 613.

## II

## COURT DID NOT COMMIT REVERSIBLE ERROR IN REFUSING SPECIFIC SELF-DEFENSE INSTRUCTIONS COVERING REASONABLE DOUBT, INTENT AND BURDEN OF PROOF

Woods asserts that the court erred in refusing to give the following three tendered instructions concerning self-defense:

"Def's. Instruction No. 2.

If you find from all of the evidence that the defendant did kill Rudolph C. Coleman while being assaulted by him, the question of whether or not the circumstances justified defendant in killing his assailant is for you to determine, and if a reasonable doubt exists as to whether or not defendant acted in justifiable self-defense he is entitled to be acquitted.

*Bohan* v. *State,* 194 Ind. 227, 141 N.E. 323; *Dorak* v. *State,* 183 Ind. 622, 109 N.E. 711; *Clark* v. *State,* 159 Ind. 60, 64 N.E. 589".

"Def's. Instruction No. 3.

You are instructed that while intent is an element of the offense charged in the indictment, the intention to take a life does not make the killing criminal when done in self-defense. If you find from all of the evidence that the defendant did kill Rudolph C. Coleman as charged in the indictment, and that the killing was intentional, and if you further find that the defendant acted in self-defense, you are instructed that such killing was not criminal regardless of the intent. *Hicks* v. *State,* 51 Ind. 407; *Moore* v. *State,* 226 Ind. 428, 81 N.E. 2nd 669".

"Def's. Instruction No. 4.

From what has been stated in other instructions concerning the burden which rests upon the State of Indiana to prove, among other things and beyond a reasonable doubt, that the accused unlawfully killed another, it follows that if death resulted from the proper exercise by the accused of the right of self-defense the killing was not unlawful. Therefore, in a case involving the issue of whether or not the accused acted in self-defense, the burden rests upon the State of Indiana to establish beyond a reasonable doubt that death did not result from the proper exercise on the part of the accused of the right of self-defense."

The principal thrust of the argument is that an instruction which was given by the court concerning self-defense did not disclose to the jury that the burden was upon the State to disprove Woods' claim of self-defense. To the contrary, according to Woods, the instruction given strongly infers that the burden is on the defendant. That instruction as given is as follows:

"Instruction Number 29.

The Court further instructs you that one person may kill another intentionally under such circumstances that the homicide or killing constitute no crime, but is justified by the law. This is known as the law or doctrine of self-defense and may be, and is thus stated for your guidance.

Whoever, being himself without fault and in a place where he has a right to be, so far as his assailant is concerned,

is assaulted, he may, without retreating, repel force by force; and he need not believe that his safety requires him to kill his adversary in order to give him a right to make use of force for that purpose. When, from the act of his assailant, he believes, and has reasonable ground to believe, that he is in danger of losing his life or receiving great bodily harm from his adversary, the right to defend himself from such danger or apprehended danger may be exercised by him; and he may use it to any extent which is reasonably necessary, and, if his assailant is killed as a result of the reasonable defense of himself, he is excusable in the eyes of the law. The question of the existence of such danger, the necessity or apparent necessity, as well as the amount of force necessary to employ to resist the attack can only be determined from the standpoint of the defendant at the time and under all the then existing circumstances. Ordinarily one exercising the right to self-defense is required to act upon the instant and without time to deliberate and investigate and under such circumstances a danger which exists only in appearance, is as real and imminent to him as if it were actual.

A person in the exercise of the right of self-defense must act honestly and conscientiously.

When all danger and all apparent danger of the loss of life, or of receiving great bodily harm, from the assault of his assailant is at an end and passed, then the right to use force is at an end and should cease. The person exercising the right of self-defense must honestly believe, and have reasonable ground to believe, when he makes use of force to protect himself from an assailant, that at the time he uses the force it is then necessary to do so to protect his life, or to protect his person from great bodily harm.

One who is in no apparent danger, and who apprehends no danger and who has no reasonable ground for such apprehension cannot kill another and successfully interpose the defense of self-defense."

We first note that Instruction 29 as given here was specifically approved in *Brown* v. *State* (1971), 255 Ind. 594, 265 N.E.2d 699.

Furthermore, Woods did not object to that instruction nor does he assert upon appeal that it is erroneous. He does, however, argue that without the clarifying or explanatory

language of his tendered instructions, the self-defense instruction given tended to mislead the jury.

Self-defense is an evidentiary concept. It is a facet of the case in trial which arises or exists only if certain evidence is adduced. It is a concept which exists because common sense and justice, as well as the statutory law [IC 35-13-10-1, Ind. Ann. Stat. § 9-2412 (Burns Supp. 1974)] dictate that one may defend himself from harm; but it is a concept which does not crystallize until the evidence has been developed during trial. *Compare Loza* v. *State* (1974), Ind. App., 316 N.E.2d 678.

This is perhaps demonstrated by the following portion of *Jennings* v. *State, supra:*

> "The elements of self-defense, proof of which is incumbent upon one seeking to avoid criminal culpability, have previously been set forth by this Court in *King* v. *State* (1968), 249 Ind. 699, 234 N.E.2d 465.
>
> * * *
>
> "When a defendant has successfully raised the issue of self-defense, the state may either rebut it directly, *Johnson* v. *State, supra,* or rely upon the sufficiency of its evidence in chief. *Nelson* v. *State* (1972), 259 Ind. 339, 287 N.E.2d 336. Whether the State has borne its burden of demonstrating that the homicidal act was not carried out in self-defense is a question of fact to be decided by the jury. *King* v. *State, supra; Robinson* v. *State* (1962), 243 Ind. 192, 184 N.E.2d 16."

The first sentence as quoted from *Jennings,* if considered out of context, might seem supportive to one who would argue that a defendant must prove self-defense beyond a reasonable doubt if he is to escape culpability for an otherwise criminal homicide. No such argument is made by the State here; nor could it be in light of the remainder of what was said in *Jennings.* The entire language quoted from *Jennings* must be considered if portions of it are to be meaningful. A defendant does bear an evidentiary burden if he is to successfully avoid conviction unless the State's own evidence discloses the pres-

ence of self-defense as a factual possibility which might give rise to reasonable doubt upon the ultimate issue of guilt. If, for example, the State were to rest with bare proof of the homicide it would be incumbent upon defendant to come forward with evidence of the circumstances surrounding the killing sufficient to permit a jury to have reasonable doubt upon the matter of self-defense. It is not enough for him to say, "I did it in self-defense."

When evidence that the homicide was committed in self-defense is before the jury, whether adduced by the State or by defendant, that evidence must be considered along with all other evidence in making a determination whether defendant is guilty of a crime beyond reasonable doubt.

It was noted in *Fuller* v. *State* (1973), 261 Ind. 376, 304 N.E.2d 305, 308:

> "The correct rule is that all properly admitted evidence is relevant to the issue of 'reasonable doubt'. The important issue is whether or not the jury has a 'reasonable doubt', not the source of that doubt."

While the trial court may have been well-advised to instruct the jury, as in *Alderson* v. *State* (1924), 196 Ind. 22, 145 N.E. 572, that it was not incumbent upon Woods to prove that he acted in self-defense, we are not aware of any Indiana precedent which requires such instruction, or its converse (that the State must prove beyond a reasonable doubt that defendant did not act in self-defense).

In *Brown* v. *State, supra,* an instruction identical to Instruction 29, given here, was approved. Examination of all instructions given in the *Brown* case, as per the record in that appeal, discloses no instruction given which dealt with reasonable doubt or the burden of proof in specific relationship to self-defense. In *Brown*, as here, burden of proof and reasonable doubt were treated in the general sense and as those requirements or standards are to be considered upon the ultimate issue of guilt. To be sure, Brown did not tender a specific instruction on the self-defense issue as did Woods here, but

we believe a fair interpretation of the Brown decision leads to the conclusion that the validity of a conviction does not necessarily depend upon instructing a jury specifically to the effect that the State must prove beyond a reasonable doubt that "death did not result from the proper exercise on the part of the accused of the right of self-defense." A guilty verdict is not fatally infected merely because such an instruction is not given. We may not therefore say as a matter of law that refusal of a properly tendered instruction to that effect constitutes reversible error.

Without question it is error to instruct a jury that a defendant must bear the burden of proof upon the self-defense issue if reasonable doubt is to exist. *Dorak* v. *State* (1915), 183 Ind. 622, 109 N.E. 771. *See also Hill* v. *State* (1937), 212 Ind. 692, 11 N.E.2d 141; *Males* v. *State* (1927), 199 Ind. 196, 156 N.E. 403; and we do not read *Jennings* v. *State supra*, to hold otherwise. The jury was not so instructed here; nor do we believe Instruction 29 which was given is reasonably susceptible of such construction.

Conversely, to say that the burden is upon the State to disprove a defendant's claim of self-defense (*King* v. *State, supra*) is no more than to say that the State must prove beyond a reasonable doubt that defendant committed the crime charged or a crime included therein. If there exists a reasonable doubt as to whether a defendant acted in self-defense there is, of necessity, a reasonable doubt as to whether he is guilty of the offense. Homicide committed in self-defense is no crime at all (IC 35-13-10-1), *supra*, and the jury here was so instructed. The issue is defendant's guilt. Guilt in a homicide prosecution is not proved beyond a reasonable doubt if there is reasonable doubt as to whether the killing was justified, e.g., done in self-defense. To say then, that the prosecution must prove guilt beyond a reasonable doubt and that the court must define self-defense telling the jury that one acting in self-defense commits no crime at all, is to say all that need be said.

Viewing the instructions as a whole, it can be said that the jury was advised of its duty and limitations. They were clearly instructed that if reasonable doubt existed as to the guilt of the defendant, they must acquit. Furthermore, the self-defense instruction given is indicative of the requirements placed upon the State in that it points out that the matter of self-defense must be viewed from the standpoint of the defendant himself. Additionally, the jury was instructed that they must acquit if any reasonable doubt was entertained as to defendant's guilt as covered by the indictment even though they believed from the evidence that Woods was guilty of wrong doing.

We cannot say that, in view of all instructions given, the jury was misled; that they were inadequately instructed upon the matter; nor that Woods was prejudiced in this regard.

The self-defense instruction given was extensive and correct. *Brown* v. *State, supra.* When viewed with the other instructions given, particularly the instructions concerning reasonable doubt and burden of proof, the doctrine of self-defense needed no further explanation or qualification such as contained in the instructions requested by Woods.

## III

### ERROR NOT COMMITTED IN PERMITTING DEFENDANT'S WITNESS TO ANSWER QUESTION CALLING FOR NAME OF FATHER OF HER ILLEGITIMATE CHILD

Appellant asserts as error, the following, as drawn from the record during the testimony of Susan Nuckles, a witness for the defendant:

"Q. And you say your baby, who is the father of the baby? MR. GILROY (Atty. for Def.). I'll object to that question. It is irrelevant and immaterial. THE COURT: Overruled. Answer the question. A. Philip Stewart."

Aside from the fact that the objection, "irrelevant and immaterial", is too general and thus is insufficient to present any question upon appeal [*Williams* v. *State* (1907), 168 Ind. 87, 79 N.E. 1079; *Beaty* v. *Donaldson* (1964), 136 Ind. App. 269, 200 N.E.2d 233; 1 Bobbitt, Indiana Appellate Practice and Procedure 202], we note in passing that the subject matter covered was initiated into the case by defendant himself, when upon direct examination the witness was asked and answered as follows:

"Q. And are you married?
A. No, single.
Q. And what do you do for a living?
A. I am on Welfare right now because I just had a baby."

The evidence complained of was merely cumulative and in addition to that already elicited by defendant himself. *Brower* v. *State* (1956), 236 Ind. 35, 138 N.E.2d 237; *Hannah* v. *State* (1974), 160 Ind. App. 317, 311 N.E.2d 838; *Weingart* v. *State* (1973), 157 Ind. App. 597, 301 N.E.2d 222.

Furthermore, we fail to see how the answer could have prejudiced defendant. Of the five female witnesses in the case, two of the three called by the State testified that they had a child or children out of wedlock. The circumstances therefore did not set Miss Nuckles apart from other witnesses, either as to credibility or as to sexual permissiveness. To the contrary, the bearing of illegitimate children seemed to be the rule rather than the exception for the ladies having personal knowledge of the matters in issue. We find no cause for reversal in this respect.

Judgment affirmed.

Buchanan, J., concurs; White, J., dissents with opinion.

### DISSENTING OPINION

WHITE, J.—The court's opinion correctly states that "[g]uilt in a homicide prosecution is not proved beyond a

reasonable doubt if there is a reasonable doubt as to whether the killing was . . . done in self-defense." The opinion piles words upon words upon words to reach that conclusion and its further conclusion that "[t]o say then, that the prosecution must prove guilt beyond a reasonable doubt and that the court must define self-defense telling the jury that one acting in self-defense commits no crime at all, is to say all that needs to be said."

That may or may not be all that needs to be said to a jury of lawyers to tell them by implication that if a reasonable doubt exists as to whether or not defendant acted in justifiable self-defense he is entitled to be acquitted, but it is utterly unrealistic to suggest that lay jurors will comprehend the implication.[1]

In *Miller* v. *State* (1944), 223 Ind. 50, 55, 58 N.E.2d 114, 116, the court noted that:

> "The purpose of instructions is to inform the jury of the law applicable to the facts in such a manner that the jurors will not be misled, and that they may clearly comprehend and understand the case and arrive at a just, fair, and correct verdict. Jurors are laymen, unversed in the technicalities of the law, and this fact should be considered in drafting instructions. An instruction may correctly state the law, and yet, because of involved and obscure language, unintelligible to the layman who hears it read but once, be so misleading as to be prejudicial and therefore erroneous."

At bar, the Court's Instruction No. 29 does contain language which to a layman can certainly seem involved and obscure, although it does correctly state the substantive law of self-defense, but does so wholly without reference to the burden of proof or to the rule of reasonable doubt. Instruction No. 7 does nothing to fill that void when it tells the jury only that the State has the burden of proving the material allegations of the indictment and the essential elements of

1. For an example of misunderstanding by an "expert", see *Homicide* § 84, 15 I.L.E. 336 and page 62 of the 1973 pocket supplement.

the crimes therein charged. (No. 7 was a preliminary instruction not read again at the end of the trial when No. 29 was read.) Instruction No. 20 (which was a final instruction) likewise relates reasonable doubt only to "the guilt of the defendant *as charged in or covered by the indictment,*" without mentioning the defense of self-defense.

In *Fleming* v. *State* (1894), 136 Ind. 149, 153, 36 N.E. 154, 155, there was evidence of alibi. The court refused defendant's tendered instruction which would have called attention to that evidence and would have told the jury that if it raised a reasonable doubt the jury could not convict. The Supreme Court said:

> "A general charge was given upon the subject of reasonable doubt as it should affect the jurors collectively and individually, and as it should apply to the identity of the person claimed to have committed the larceny charged, but the specific elements of the instruction asked were not given in any other charge.
>
> \* \* \*
>
> "A general instruction does not authorize the refusal of a specific instruction applicable to the charge and the evidence: *Parker* v. *State* [(1894), 136 Ind. 284], 35 N.E. Rep. 1105; *Carpenter* v. *State*, 43 Ind. 371.
>
> "We conclude, therefore, that the refusal of this instruction was error, and that the judgment of the circuit court should be reversed."

In *Parker* (cited above in *Fleming*) the court said:

> "To the end that the jury may be correctly informed as to the law applicable to his case, and that he may not be erroneously convicted, a defendant on trial, charged with crime, has the right to insist that the court shall instruct the jury on all legal questions necessary to enable them to reach a true verdict." (136 Ind. at 292.) See also *Dunn* v. *State* (1906), 166 Ind. 694, 702, 78 N.E. 198, 200.

The burden of proof as to the defense of self-defense is a legal question in this case and the defendant was entitled to have the jury instructed upon it, specifically as well as generally. His tendered instructions 2 and 4 correctly state the

law in that regard and the State does not contend otherwise.

It was error for the court to refuse to give either of said instructions and for that error the judgment should be reversed and the cause remanded for a new trial.

NOTE.—Reported at 319 N.E.2d 688.